**LINKSTROM, Deborah, as Administratrix of the Estate of Sylvestre Garcia, Jr., Deceased, Appellant,**

v.

**GOLDEN T. FARMS Trumbower, Douglas Franklin Trumbower, Ord Gallardo, Marcelo and Gallardo, Criselda.**

No. 89–1009.

United States Court of Appeals, Third Circuit.

Argued June 1, 1989.

Decided Aug. 28, 1989.

Peter M. Patton (argued), Joseph Lurie, Gelfand, Berger, Lurie & March, Philadelphia, Pa., for appellant.

Francis X. Brennan (argued), Swartz, Campbell & Detweiler, Philadelphia, Pa., for appellees.

Before HIGGINBOTHAM, GREENBERG and HUTCHINSON, Circuit Judges.

OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

This wrongful death action concerns a young migrant farm worker who died in an agricultural accident. The trial judge refused to permit the plaintiff's farm safety expert to testify regarding the safety practices a reasonable and prudent farmer would follow, and the plaintiff appeals that ruling. We review an evidentiary ruling of the district court for abuse of discretion. *In re Japanese Electronic Products*, 723 F.2d 238, 260 (3d Cir.1983), *rev'd on other grounds, Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

In our review, "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected ..." Fed.R.Evid. 103(a).

I.

The facts of this case as recounted below are simple and essentially undisputed. On the day of his death, Sylvestre Garcia, Jr. ("Garcia"), age 14, was working on the farm of Douglas Trumbower as a "dumper," a person who stands on the back of a flat-bed truck and dumps tomatoes picked by others into bins. Appellant's Appendix ("App.") at 37, 91.

At the time of the fatal accident, the tomato picking operation was moving from one tomato field to another, through an apple orchard, and Garcia was standing on the flat-bed truck as it went. App. at 88–89, 91–92. Ord Trumbower, the father of Douglas Trumbower, owner of the farm that his son leased and allegedly his son's agent, knew that dumpers sometimes rode between fields standing on trucks. On the

day of the accident Ord Trumbower drove through the orchard, aware that a flat-bed truck was behind him. App. at 22–23, 50–51, 54–58, 84–86. No one saw the accident. A few moments after the flat-bed truck drove into the orchard, Garcia lay unconscious on the ground, under the damaged branch of an apple tree; he died almost immediately thereafter. App. at 95–97.

## II.

The appellant, Deborah Linkstrom, administratrix of Garcia's estate, claims that the trial judge abused his discretion in refusing to permit a farm safety expert to testify. We agree.

The admissibility of expert opinion evidence is governed by Rule 702 of the Federal Rules of Evidence. It provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Fed.R.Evid. 702.

This court has noted that "[h]elpfulness is the touchstone of Rule 702," *Breidor v. Sears, Roebuck and Co.*, 722 F.2d 1134, 1139 (3d Cir.1983). It has further indicated that it will interpret possible helpfulness to the trier of fact broadly and will favor admissibility in doubtful cases.

> "[D]oubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility unless there are strong factors such as time or surprise favoring exclusions. The jury is intelligent enough, aided by counsel, to ignore what is unhelpful in its deliberations."

*In re Japanese Electronic Products*, 723 F.2d at 279 (quoting 3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 702[03], at 702–14–15 (1982) (footnotes omitted)). *See, e.g., U.S. v. Theodoropoulos*, 866 F.2d 587 (3d Cir.1989); *Salas by Salas v. Wang*, 846 F.2d 897 (3d Cir.1988); *but see U.S. v. Dowling*, 855 F.2d 114 (3d Cir.1988).

Moreover, there is no requirement that expert testimony be "beyond the jury's sphere of knowledge." *In re Japanese Electronic Products*, 723 F.2d at 279. Such a requirement is, in our view,

> "incompatible with the standard of helpfulness expressed in Rule 702. First, it assumes wrongly that there is a bright line separating issues within the comprehension of jurors from those that are not. Secondly, even when jurors are well equipped to make judgments on the basis of their common knowledge and experience, experts may have specialized knowledge to bring to bear on the same issue which would be helpful."

*Id.* (quoting 3 J. Weinstein and M. Berger, *Weinstein's Evidence*, ¶ 702[02] at 702–9–10 (1982)) (footnotes omitted).

The proffer of the farm safety expert's testimony, as contained in the Pre–Trial Order, reads as follows:

> Mr. Jester will testify as an expert witness that the practice of farm labor crew members traveling from field to field while riding on the back of flat-bed trucks created a severe risk of injury to farm labor crew members. Mr. Jester will testify that a reasonable and prudent person in the position of the Defendants would have identified the hazard associated with such transportation practices, and employed reasonable accident measures to reduce or eliminate the severe risk of injury including, but not limited to, prohibiting farm labor crew members from standing on beds or appendages any time such trucks were moving.

App. at 256. More generally, Linkstrom intended her expert to testify as to "what a reasonable farmer does while employing contract labors [sic] as far as issuing safety rules and seeing that the work is conducted in a safe manner." App. at 140. She argued "that there are standards of good practice in the farm industry regarding safety of operations such as this. And that the farmer, in this case Mr. Trumbower, violated those standards." App. at 141.

The Trumbowers claimed that the standard in the industry had nothing to do with whether they had acted properly, and that

the question was, simply, whether they had exercised reasonable care, which was "a judgment call" that the jury could make unassisted. App. at 143. The trial judge did not elaborate his reasons for excluding the expert's testimony, but he seemed to agree with the Trumbowers when he said, "I think I'm going to stick with the reasonable man theory and I'm going to exclude your expert ..." App. at 144. Under the standard approved in *In re Japanese Electronic Products*, 723 F.2d at 279, barring strong factors favoring exclusion, the testimony should have been allowed if there was some reason to think it might have been useful. The thrust of the Trumbowers' argument was that the testimony was useless because it was irrelevant to the jury's understanding of what a reasonable person in the Trumbowers' position would do. The district court agreed. We do not.

Jurors can be assumed to know how a reasonable and prudent person behaves, but a reasonable and prudent person does not automatically know how to act in a situation with which he or she is unfamiliar, and a jury is not automatically able to establish a reasonable standard of care for circumstances with which it is unfamiliar. Counsel for the plaintiff asserted that none of the jury members had ever worked on a farm or been involved in farming, and there was no rebuttal to that assertion. App. at 9. The conditions of work faced by migrant farm laborers were outside their experience and very likely outside their knowledge. Jurors in a district with many urban residents may be less familiar with standards of care for farming practices than with standards of care for subway systems. An agricultural expert could bring within such jurors' vision a better understanding of the events that may have contributed to the death of a young farm worker on a flatbed truck. Even if the jurors had some knowledge of farming, the testimony could still have been useful. As this court has noted, expert testimony need not be beyond the jury's sphere of knowledge to be helpful. *In re Japanese Electronic Products*, 723 F.2d at 279.

We can think of several respects in which the testimony of the farm safety expert might have assisted the jury. First, and most important, there is assistance suggested in appellant's proffer of the expert's testimony. App. at 256. Where the jurors were called on to formulate standards of reasonable behavior in circumstances with which they were unfamiliar, a farm safety expert could have made certain that they understood the dangers of which the Trumbowers were aware or should have been aware, and the precautions which the Trumbowers knew or should have known they could have taken to avert those dangers. Second, a farm safety expert could have helped the jury to distinguish widespread, yet unsafe, practices from safe and reasonable ones. Third, where some of the farm laborers who testified were not completely fluent in English (App. at 96–7), an expert familiar with the conditions under which they worked could have assisted the jury in understanding those conditions. Finally, where there was ambiguity as to how the accident occurred, an expert familiar with agricultural accidents might have offered some insight that would help the jury understand what happened. The testimony of the farm safety expert could have been helpful to the jury in any or all of these ways.

The Trumbowers made no argument that the testimony of the expert would be harmful or prejudicial, only that it was irrelevant. The district court did not discuss the question of potential harm or prejudice. The only basis the record reveals for the court's exclusion of the expert's testimony was that the court wanted to "stick with the reasonable man theory." Our reading of the law is that the testimony of the farm safety expert would not compete with a "reasonable man theory," but rather would enhance its application. A jury with no farming experience could no doubt form some idea on its own of what a reasonable and prudent farmer would do in the circumstances, but it could form a clearer idea and develop better informed standards of care with the help of expert testimony. We conclude that the district court excluded testimony that was potentially helpful to

the jury without sufficient grounds for so doing, and thereby abused its discretion. The exclusion of the testimony affected a substantial right of the plaintiff in that it withheld from the jury information that might have led it to make a different evaluation of the farm safety practices of the Trumbowers and, as a result, might have led to a different verdict. It was, therefore, reversible error.

### III.

For the foregoing reasons, we will vacate the district court's order of October 13, 1988 and remand the matter to the district court for a new trial consistent with this opinion.[1]

A default judgment was obtained against defendants Marcelo and Griselda Gallardo on March 13, 1988. Upon motion of plaintiff's counsel, the district court dismissed them as defendants in an order of December 8, 1988. Thus, for purposes of this appeal, the only parties who were defendants below are Golden T. Farms, Douglas Trumbower and Ord Trumbower.

---

1. We have reviewed and found without merit appellant's claims that:

(1) the trial court abused its discretion in refusing to admit testimony from a Pennsylvania state trooper on the position of the victim before the accident and the course of the truck;

(2) the trial court erred in refusing to submit to the jury appellant's claim that appellee's violation of 29 U.S.C. § 1842 was negligence per se that caused the appellant's injuries.

We have also reviewed and will deny appellee's motion to quash the appeal.