AMERICAN TECHNOLOGY RESOURCES, Appellant,

v.

UNITED STATES of America.

James A. PITTS, Appellant,

v.

UNITED STATES of America.

Albert S. PITTS, Appellant,

v.

UNITED STATES of America.

Thomas M. PITTS, Appellant,

v.

UNITED STATES of America.

Nos. 89–1431 to 89–1434.

United States Court of Appeals, Third Circuit.

Argued Oct. 24, 1989.

Decided Jan. 17, 1990.

Rehearing Denied in No. 89–1434 Feb. 6, 1990.

---

**3.** In analyzing the case under section 547(b)(5), the bankruptcy judge offered three sets of calculations to show that the Diethorns as unsecured creditors would have received virtually nothing in a chapter 7 distribution. Mem Op., Dec. 6, 1988, at 6 n. 7; App. 201a. She could have spared herself the trouble. The point is that in a chapter 7 distribution the Diethorns would not have been treated as unsecured creditors at all.

Howard P. Newman (argued), Palm Beach Gardens, Fla., for appellants.

Howard M. Soloman (argued), Charles E. Brookhart, Stuart E. Horwich, Gary R. Allen, Chief, Appellate Section, U.S. Dept. of Justice, Tax Div., Washington, D.C., for appellee.

Before HUTCHINSON, NYGAARD and WEIS, Circuit Judges.

## OPINION OF THE COURT

NYGAARD, Circuit Judge.

This is an appeal from a judgment in favor of the United States. The district court adjudicated appellants liable under 26 U.S.C. § 6700, the penalty provision for promoting abusive tax shelters for selling grossly overvalued distributorship franchises. Appellants raise two issues: first, whether the district court erred in concluding that the value of the American Technology Resources, ("ATR"), distributorships was "directly related" to the amount of any deduction allowable under the Internal Revenue Code; and, second, whether the district court abused its discretion in qualifying the government's expert and consequently erred by denying appellants' motion for directed verdict on the ground that the United States presented no evidence of the ATR distributorships' value.[1] We conclude that the value of the ATR distributorship is directly related to the amount of a franchise deduction allowable under 26 U.S.C. § 1253(d) and that the district court did not abuse its discretion in qualifying Professor Jeffrey Jaffe as an expert in business valuation. We will affirm.

### I

Appellant ATR, a Nevada corporation with its principal place of business in Media, Pennsylvania, produces and sells videodisc equipment. Appellants Albert Pitts, James Pitts and Thomas Pitts (The Pitts) own 77.5 percent of the issued and outstanding shares of ATR. All three are very active in ATR's operation. In 1982, Albert Pitts became president of ATR.

In November, 1982, ATR entered into an agreement with United States Motion Picture Institute (USMPI), whose president is Rolph Fuhrman, former president of ATR,

---

1. Appellants also seem to raise a third issue in the context of challenging the qualifications of Professor Jaffe: whether Professor Jaffe's testimony assisted the trier of fact to decide a fact in issue. We will also address this issue.

permitting USMPI to sell ATR territorial distributorships in the tri-state Philadelphia area. The buyers of the distributorships would have an exclusive right to sell ATR's products for forty-three years. ATR and USMPI developed a promotional package for the ATR distributorships and the Pitts sold the distributorships. In all, thirty-four distributorships were sold.

The sale of each distributorship was described in the promotional package and structured as follows:

The cost of the distributorship was the product of the term of the distributorship in years multiplied by a factor equal to ten cents per resident of the territory. This amount was called the Contingent Principal Sum. The purchaser could elect to pay the Contingent Principal Sum in a series of twenty-three installments called the Incurred Annual Contingent Amount. The first three installments of the Incurred Annual Contingent Amount would each equal twenty percent of the Contingent Principal Sum and would be due in years one, two and three, respectively. No Incurred Annual Contingent Amount would be due in years four through ten. After year ten, an installment equal to two percent of the Contingent Principal Sum would be due each year for twenty years. The Incurred Annual Contingent Amount also would be reduced each year by an amount determined by a formula based on product cost and sales.

If preferred, the purchaser could defer payment to USMPI of the Incurred Annual Contingent Amount by electing to be 100 percent personally liable for the debt ("at risk"). Under this option, payment would not be due until twenty years after the debt was incurred. The obvious effect of the election is to create a deduction for franchise costs pursuant to 26 U.S.C. § 1253(d) with no corresponding cash outlay. Under this election the only cash outlay by the purchasers initially would be payment of three Guaranteed Performance Deposits, each equaling five percent of the

Contingent Principal Sum. These payments would not be credited towards the Contingent Principal Sum.

ATR's promotional package focused heavily on the tax advantages of purchasing a distributorship. ATR emphasized that the purchaser "should receive a tax write-off equivalent to the portion of the Incurred Annual Contingent Amount for which he specifically elects to be personally 'at risk.' This can be as much as four times the amount of the Guaranteed Performance Deposit." App. at 109. ATR also assured the buyer that if any deductions were denied, ATR would provide legal services "at no additional cost." *Id.*

Thirty-two individuals and two limited partnerships purchased ATR distributorships. In 1982 and 1983, USMPI did not receive any money from these purchasers towards the Contingent Principal Sum; all elected to be "at risk" for their Incurred Annual Contingent Amount. The "at risk" amount for those two years was $7,130,-000. In 1984 through 1986, USMPI received a minimal amount towards the Contingent Principal Sum which was generated from the profits of sales. In 1984 and 1985, the "at risk" amount was $5,575,000.

In 1986, the IRS assessed penalties against the appellants by authority of 26 U.S.C. § 6700 for promoting an abusive tax shelter for tax years 1982 and 1983. Pursuant to 26 U.S.C. § 6703(c), appellants paid fifteen percent of the penalties and filed an action in the United States District Court for the Eastern District of Pennsylvania contesting their liability. The case was tried before the court which made its findings of fact and conclusions of law, adjudicating appellants subject to the penalties of Section 6700. *American Technology Resources v. United States,* 709 F.Supp. 610 (E.D.Pa.1989).[2]

The district court found that the purchasers of the distributorships were solicited by unqualified claims of tax advantages. The promotional brochure contained only a brief description of the video-disc business

---

**2.** Most of the district court's findings of fact were derived from an extensive pre-trial stipulation submitted to the court by the parties.

and a lengthy discussion of potential tax deductions. The court also found that the purchasers were passive investors who sought the tax advantages of a 4–to–1 tax shelter. The court further found that the Pitts were each intimately involved in the sales of the distributorships.

The court accepted the valuation testimony of Professor Jeffrey Jaffe, the government's expert witness who testified that the aggregate value of the distributorships did not exceed $1 million. Professor Jaffe based his conclusion on what the average venture capitalist would raise in the market for a business with the characteristics of ATR. He noted that ATR lacked a business plan and failed to have any patents or exclusive arrangements with manufacturers; the unknown future of the industry; and, inexperienced management as factors limiting the value of the distributorships. Upon this testimony the court concluded that the aggregate sale price of the distributorships ($20 million) was at least two hundred percent greater than the actual value.

Upon these findings, the district court concluded that the government proved by a preponderance of the evidence that a penalty was warranted. The court concluded, "Plaintiffs organized and participated in the sale of a plan and furnished gross valuation overstatements that were directly related to the amount of an allowable deduction." 709 F.Supp. at 619. The court entered judgment for the United States.

## II

Appellants filed this timely appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291. The district court's findings of fact are reviewed under the clearly erroneous standard. Fed.R.Civ.P. 52. *See Pleasant Summit Land Corp. v. Comm'r of Internal Revenue*, 863 F.2d 263, 268 (3d Cir.1988) *cert. denied,* — U.S. ——, 110 S.Ct. 260, 107 L.Ed.2d 210 (1989). The district court's construction of the statutory phrase "directly related" is subject to plenary review. *Strick Corp. v. United States*, 714 F.2d 1194 (3d Cir.1983) *cert. denied,* 466 U.S. 971, 104 S.Ct. 2345, 80

L.Ed.2d 819 (1984). The district court's qualification of the government's expert witness must be sustained unless manifestly erroneous. *Aloe Coal Co. v. Clark Equipment Co.*, 816 F.2d 110, 114 (3d Cir.) *cert. denied,* 484 U.S. 853, 108 S.Ct. 156, 98 L.Ed.2d 111 (1987).

## III

■ Section 6700(a) of the Internal Revenue Code, 26 U.S.C. § 6700, provides, in pertinent part,

(a) Imposition of penalty.—Any person who—

(1)(A) organizes (or assists in the organization of)—

(i) a partnership or other entity,

(ii) any investment plan or arrangement, or

(iii) any other plan or arrangement, or

(B) participates in the sale of any interest in entity or plan or arrangement referred to in subparagraph (A), and

(2) makes or furnishes (in connection with such organization or sale)—

(B) a gross valuation overstatement as to any material matter,

shall pay a penalty equal to the greater of $1,000 or 20 percent of the gross income derived or to be derived by such person from such activity.

Gross valuation overstatement is defined in Section 6700(b)(1) as meaning,

any statement as to the value of any property or services if—

(A) the value so stated exceeds 200 percent of the amount determined to be the correct valuation, and

(B) the value of such property or services is directly related to the amount of any deduction or credit allowable under chapter 1 to any participant.

26 U.S.C. § 6700(b)(1).

Appellants challenge the district court's conclusion that the value stated by them for the distributorships is "directly related" to any allowable deduction or credit. In support they argue that the value of its distributorships is not directly related to the allowability of any deduction or credit.

Appellants explain that the deduction available under their distributorship plan .is found in 26 U.S.C. § 1253(d)(1) which allows, as a business deduction, amounts paid or incurred on account of a transfer of a franchise which are contingent on the use of the franchise. They claim this deduction arises because the purchasers elected to be "at risk" for the Incurred Annual Contingent Amount and thus, "incurred" an amount on account of a transfer of a franchise. According to appellants' argument, the deduction is allowed, not because it is directly related to the value of the distributorship, but because it is directly related to the "at risk" nature of the transaction.

Appellants miss the point. Section 6700 does not require the value of the property to be directly related to the *allowability* of a deduction. It quite clearly states that the value be directly related to the *amount* of the deduction. Here, the value given the distributorships is directly related to the amount of a deduction allowable under the Internal Revenue Code (the Code). Under Section 1253(d)(1), a business deduction is allowable for amounts incurred on account of a transfer of a franchise. The amount incurred by the purchasers of the distributorships is the Incurred Annual Contingent Amount. This amount, a percentage of the Contingent Principal Sum, is set by appellants. Thus, the amount of a purchaser's tax deduction is a function of the value placed upon that distributorship by appellants. As value increases, the amount of the deduction increases. This proportional relationship satisfies the "directly related to amount" language of Section 6700. We hold that the district court did not err by concluding that the value of the distributorships was "directly related" to the amount of a deduction allowable under the Code.

## IV

Appellants next argue that the district court abused its discretion by qualifying the government's expert, Professor Jeffrey Jaffe. Rule 702 provides,

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Appellants make two arguments based upon Rule 702. First, they argue that Professor Jaffe did not testify about a "fact in issue," and should not have been allowed to testify. Appellants assert that the "fact in issue" in this case is the value of the ATR distributorships and that Professor Jaffe's testimony on the amount of capital a venture capitalist would have raised had ATR been sold on the open market is not instructive. Appellants' construction of Rule 702 is too restrictive. The purpose of Rule 702 is to admit expert testimony that is helpful to the trier of fact. *Linkstrom v. Golden T. Farms,* 883 F.2d 269 (3d Cir.1989). We interpret the helpfulness standard broadly. *Id.* An expert witness need not testify specifically about a fact in issue so long as his testimony is considered helpful by the trier of fact in determining a fact in issue.

Even if we assume that appellants are correct that the value of ATR is not the value of the ATR distributorships, the question is still whether testimony about the value of ATR would assist the court to determine the value of the distributorships. The ATR distributorships are an exclusive license to sell ATR products in a certain geographic territory. This exclusive license to sell ATR products is a component of the value of ATR. Thus the value of the distributorships is a function of the value of ATR. We conclude that testimony about the value of ATR could help the district court determine the value of ATR's distributorships. Its decision to admit the testimony is not error.

Appellants next argue that Professor Jaffe was not qualified to testify about the value of ATR's distributorships. Specifically, appellants assert that Professor Jaffe did not know how to value a distributorship; that distributorships are different from the businesses which Professor Jaffe had expertise to value; and, that he knew

nothing about the videodisc industry or running a distributorship. We disagree.

■ Under Rule 702, "an expert witness must have such skill, knowledge, or experience in the field as to make it appear that his opinion will probably aid the trier of fact in his search for the truth." *Aloe Coal Co. v. Clark Equipment Co.*, 816 F.2d 110, 114 (3d Cir.1987). The basis of qualification can be practical experience as well as academic training and credentials. *Hammond v. International Harvester Co.*, 691 F.2d 646 (3d Cir.1982).

■ Here, Professor Jaffe obtained his expertise from both practical experience and academic training. Professor Jaffe is an Associate Professor of Finance at the Wharton School of Business at the University of Pennsylvania. He teaches courses in speculative markets, corporate finance, investments, and real estate finance. He has a Ph.D. in finance from the University of Chicago. He is a member of several professional finance organizations and has written a number of published articles on corporate finance and investments. He has also performed consulting work valuing a number of businesses, varying from publicly-held companies to privately-held companies, like ATR. In summary, Professor Jaffe appears very well qualified to testify about the value of a business and we conclude that the district court did not abuse its discretion when it qualified him as an expert.

Although appellants' argument is couched in terms of whether Professor Jaffe was qualified, the real thrust of their arguments appear to challenge the helpfulness of Professor Jaffe's testimony, as well as its credibility. The district court concluded, and we agree, that his testimony would be helpful. Finally, credibility was a decision for the trier of fact to whom we now defer.

## V

In summary, we hold that the district court correctly concluded that the value placed on the distributorships by appellants was directly related to the amount of a deduction allowable under the Code, and that the court did not abuse its discretion by admitting the testimony of Professor Jaffe or by qualifying him as an expert. We will affirm.