922 F.2d 1426
 31 Fed. R. Evid. Serv. 1231
 Hester M. ROGERS, individually and as Special Administratrix
of the Estate of Clinton W. Rogers, decedent,
Plaintiff-Appellant,
v.
RAYMARK INDUSTRIES, INC., et al., Defendants,
and
Fibreboard Corporation and Keene Corporation, Defendants-Appellees.
 No. 89-15066.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 5, 1990.
Decided Jan. 9, 1991.
 
 Gloria J. Husick, Carlson & Husick, Dublin, Cal., for plaintiff-appellant.
 Steven M. Garrett and Kelly C. Wooster, Brobeck, Phleger & Harrison, San Francisco, Cal., for defendant-appellee Fibreboard Corp.
 Larry C. Lowe, Morgenstein & Jubelirer, San Francisco, Cal. (argued case for defendant-appellee Keene Corp.) and J. Lawrence Judy, Shield & Smith, San Francisco, Cal. (signed the briefs), for defendant-appellee Keene Corp.
 Appeal from the United States District Court for the Northern District of California.
 Before GOODWIN, Chief Judge, BROWNING and RYMER, Circuit Judges.
 RYMER, Circuit Judge:
 
 
 1
 This is an asbestos case. The appeal raises questions about the extent of a trial judge's discretion to exclude expert and percipient witness opinion testimony under Fed.R.Evid. 403 and to permit use of third-party x-rays for demonstrative purposes even though they had not been identified in the pre-trial order.
 
 
 2
 Hester Rogers ("plaintiff"), widow of Clinton Rogers ("Rogers"), sued Fibreboard Corporation and Keene Corporation, two asbestos manufacturers ("defendants"), following her husband's death from lung cancer. Plaintiff claimed that Rogers's fatal lung cancer could be traced in part to his exposure to asbestos as a shipyard worker at the Kaiser Shipyard # 1 in Richmond, California, during World War II. Defendants countered that Rogers developed lung cancer solely from cigarette smoking. Mrs. Rogers appeals from the judgment entered on a special jury verdict in favor of defendants, challenging the district court's evidentiary rulings. We affirm.
 
 
 3
 * Clinton Rogers worked as a welder at Kaiser Shipyard # 1 from 1942 through 1945. He primarily worked below deck building "Liberty" cargo ships. There, workers of various crafts worked side-by-side at a frantic pace to build ships for the war effort. Rogers also spent part of his time in a twenty-by-thirty foot canvas shack training new workers in a variety of skills.
 
 
 4
 Rogers was exposed to asbestos in several ways. He used asbestos cloth to shield himself and the ship from welding sparks. He frequently worked alongside insulators who stirred up asbestos dust as they covered the pipes throughout the ship. Finally, when Rogers worked in the training shack, he showed new workers a variety of tasks, including how to apply and remove asbestos from pipes.
 
 
 5
 Rogers smoked between half a pack and two packs of cigarettes a day for 45 years. He smoked during the period he worked at Kaiser. Rogers died of lung cancer in 1982.
 
 
 6
 Both sides agree that cigarette smoking was the primary cause of Rogers's lung cancer. Plaintiff claimed, however, that asbestos also contributed significantly to her husband's cancer.
 
 
 7
 Her experts testified that when a person smokes cigarettes and inhales asbestos at the same time, the two substances work together to increase the absorption of carcinogens. Opinions were in conflict about what evidence is needed to link asbestos to a particular person's cancer. Some experts thought epidemiological evidence alone was enough. Others required epidemiological evidence along with the presence of asbestosis or some other disease specifically linked to asbestos. Still others required epidemiological studies combined with the presence of pleural plaques.
 
 
 8
 Epidemiological studies showed that workers in asbestos production plants have the highest cancer rates. Workers who install insulation--for example, the pipe insulators at shipyards like Kaiser--also develop cancer at an increased rate but not as frequently as plant workers. Shipyard workers do not develop cancer at a greatly increased rate; but welders do show some increased cancer rates. Finally, there was evidence that workers exposed to asbestos during World War II have developed cancer at rates higher than similar workers before and after the War.
 
 
 9
 Plaintiff argued that Rogers should not be considered a shipyard worker for the purpose of determining his cancer risk because that group included people with jobs and exposure levels unlike Rogers's. Instead she urged that Rogers's exposure level was closer to that of insulation workers because the frenzied pace of work during World War II forced him to spend much time working alongside insulators. There was evidence that Rogers's additional task of instructing workers in installation and removal of asbestos increased his level of exposure beyond that experienced by an ordinary welder. Defendants countered that Rogers's risk could not be compared to that of insulators because he only spent a small portion of his time around insulation work, and that any increased risk of cancer could not be traced to asbestos because welders are exposed to a variety of other carcinogens, including nickel and cadmium.
 
 
 10
 The parties likewise disagreed about whether Rogers's lungs evidenced significant exposure to asbestos. It was undisputed that he did not have asbestosis or any other disease specifically associated with asbestos. Yet plaintiff claimed that Rogers had one pleural plaque, and that the presence of this plaque indicated asbestos exposure. Pleural plaques are bulges in the lining of the lung. They do not cause pain or inhibit breathing and they are not malignant, but there was evidence that plaques are frequently seen in people who have been exposed to significant doses of asbestos and may serve as markers of that exposure. Some experts opined that if a patient had true asbestos-related plaques, there would be more than one plaque, and the plaques would be found on both sides of the chest cavity. Defendants' experts testified that the abnormality in Rogers's lung was not a plaque but rather was a change related either to the lung cancer or to a previous respiratory illness, and that, even if it were a plaque, it was irrelevant because true asbestos plaques are multiple and bilateral. Finally, the defense claimed that Rogers's lungs showed the types of abnormalities and diseases specifically associated with cigarettes.
 
 
 11
 The jury returned a special verdict, finding that defendants' products contained a design defect, that defendants knew of the defect when it left their possession, and that the defect did not cause Rogers's lung cancer. Mrs. Rogers contends that the district court erred by (1) excluding testimony proffered by Buddy Ay, one of plaintiff's expert witnesses, which would have explained how asbestos was installed on Liberty ships; (2) excluding testimony of Harry Dutton, a percipient witness, offered to show that the level of dust at Kaiser was greater than the level of dust at certain asbestos production factories for which no epidemiological studies existed; and (3) permitting defendants' expert physician to use x-rays of an unidentified person to demonstrate what a supposedly true pleural plaque would look like, when these x-rays had not been identified in the pre-trial order.
 
 II
 
 12
 We review decisions regarding admission of evidence for abuse of discretion. Daily Herald Co. v. Munro, 838 F.2d 380, 388 (9th Cir.1988). In the area of admission of expert testimony, we will uphold the district court's decision unless that decision is "manifestly erroneous." Salem v. United States Lines Co., 370 U.S. 31, 35, 82 S.Ct. 1119, 8 L.Ed.2d 313, 317 (1962); United States v. Cuevas, 847 F.2d 1417, 1429 (9th Cir.1988), cert. denied, 489 U.S. 1012, 109 S.Ct. 1122, 103 L.Ed.2d 185 (1989).
 
 
 13
 The admissibility of demonstrative evidence lies largely within the discretion of the trial court. Lies v. Farrell Lines, Inc., 641 F.2d 765, 773 n. 9 (9th Cir.1981) (citing Wright v. Redman Mobile Homes, Inc., 541 F.2d 1096, 1097-98 (5th Cir.1976)). Fibreboard and Keene argue that use of demonstrative evidence should be analyzed under a lesser standard, because such evidence is never formally admitted. It is unnecessary for us to resolve this issue as no substantial injustice occurred, and we do not reverse for evidentiary errors unless refusal to do so would be "inconsistent with substantial justice." Fed.R.Civ.P. 61.
 
 III
 A. Exclusion of Expert Testimony
 
 14
 Plaintiff offered Buddy Ay as an expert in marine asbestos insulation techniques. Ay has worked in the field of asbestos insulation for 30 years. He worked as an insulator for the Navy from 1960 through 1981. He also served as an asbestos safety consultant for the National Cancer Society from 1977 through 1979. Ay retired from the Navy in 1981 and now runs his own insulation business. Ay has testified frequently as an expert in asbestos cases.
 
 
 15
 Rogers spent some of his time in a canvas enclosure teaching various skills, including the use of a pneumatic chipping gun to remove asbestos insulation. Plaintiff's offer of proof indicates that Ay would have explained the job of chipping and the amount of dust that would have been created in the canvas enclosure. He would have shown samples of asbestos products to the jury. Finally, Ay would have described the types of insulation that were used on World War II Liberty ships and how they were installed. He would also have identified what type of asbestos dust would become airborne in a given work setting and the type of work settings that existed in 1945.
 
 
 16
 Ay's knowledge of shipyard conditions during the War came from discussions with insulators of that period, including his father and his father's friends. In addition, although Ay did not himself build World War II Liberty ships, he did repair work on these ships in later years. By other witnesses plaintiff proposed to show that insulation practices during the War were the same as those used through the 1960's.
 
 
 17
 Rule 702 of the Federal Rules of Evidence governs the admission of testimony by experts. Persons with specialized knowledge may testify if their testimony will be helpful to the trier of fact in determining an issue of fact. A witness can qualify as an expert through practical experience in a particular field, not just through academic training. American Technology Resources v. United States, 893 F.2d 651, 656 (3d Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 2176, 109 L.Ed.2d 505 (1990). Nor is the expert required to be personally familiar with the facts or data of the particular case about which he is testifying; an expert opinion may be based on any type of evidence commonly used by experts in the field. Fed.R.Evid. 703.
 
 
 18
 Even if the court finds a witness qualified under Rule 702, it may still exclude testimony under Rule 403. See McGlinchy v. Shell Chem. Co., 845 F.2d 802, 806 (9th Cir.1988); Shad v. Dean Witter Reynolds, Inc., 799 F.2d 525, 529-30 (9th Cir.1986) (probative value of expert opinion on churning not outweighed by time consumed); 3 J. Weinstein & M. Berger, Weinstein's Evidence 702-18 to 702-22 (1990). Rule 403 permits the court to exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or needless presentation of cumulative evidence. Fed.R.Evid. 403.
 
 
 19
 The district court has considerable latitude in performing the Rule 403 balancing test. See, e.g., United States v. Kinslow, 860 F.2d 963, 968 (9th Cir.1988), cert. denied, --- U.S. ----, 110 S.Ct. 96, 107 L.Ed.2d 60 (1989); Cuevas, 847 F.2d at 1429. An appellate court will not reengage in a balancing of the probative value and prejudicial effect. Maddox v. City of Los Angeles, 792 F.2d 1408, 1417-18 (9th Cir.1986). It does not matter whether we would have struck the same balance as the district court. Lifshitz v. Walter Drake & Sons, Inc., 806 F.2d 1426, 1432 (9th Cir.1986). We will uphold the district court's decision absent a clear abuse of discretion. Locricchio v. Legal Services Corp., 833 F.2d 1352, 1359 (9th Cir.1987).
 
 
 20
 The district court found that the probative value of Ay's testimony was not strong for three reasons: it was only tangentially related to the issues at trial; plaintiff had presented testimony bearing on the same point through other witnesses; and the proffered testimony had the potential of confusing the jury by unduly emphasizing a narrow issue. This ruling was well within the court's discretion.
 
 
 21
 Ay's testimony had minimal probative value. His description of shipyard insulation techniques would have been relevant only to that portion of Rogers's work experience which put him in close proximity to insulators. Whereas the jury needed to know about conditions for a welder at Kaiser during World War II, Ay's primary experience came from working on ships long after World War II in shipyards other than Kaiser. Although Ay could apply his experience in the field and his conversations with World War II era insulators to the evidence about conditions at Kaiser, his testimony would have been one step removed. Moreover, Ay could only describe what conditions were like when Rogers worked next to insulators or when Rogers taught the use of a pneumatic chipping device. His testimony would have had no bearing on the conditions that existed when Rogers was teaching new workers other skills or when insulators were not working in the same compartments as Rogers.
 
 
 22
 Against that level of probative value, the district court correctly balanced prejudicial effect. The jury might well have been confused into equating Ay's description of life as an insulator with life as a welder and have been misled by Ay's videotapes and samples of asbestos products into supposing that these were the dispositive items upon which to focus.
 
 
 23
 The district court also properly considered the fact that plaintiff's other witnesses already had presented most of the relevant testimony Ay had to offer. Clark, a welder at Kaiser during World War II, described the process of insulation in detail and explained how it affected working conditions for the welders. Another coworker, Willie Rogers, described the canvas shack where Rogers instructed welders, chippers and scalers. Plaintiff also introduced the videotaped deposition of Harry Dutton, a contractor who supplied insulation workers and materials to Kaiser during World War II, who testified about the process of installing insulation and about the conditions at Kaiser which placed welders in close proximity to insulators. One of plaintiff's epidemiological experts, Dr. Smith, compared conditions at shipyards during World War II with conditions at other times. He also described different types of workers and activities in World War II shipyards and compared the extent of asbestos exposure for each. Finally, plaintiff showed a 1943 Department of Education training tape depicting the process of insulating pipes.
 
 
 24
 Plaintiff contends that she particularly needed Ay's testimony because he would make an articulate, eloquent and clear presentation. In this connection she notes that many of her husband's coworkers had died and that others had forgotten the details or were too unsophisticated to describe their former working conditions articulately. Nevertheless, a party is not entitled to have an expert testify solely because that witness can eloquently summarize the evidence. That job belongs to counsel.
 
 
 25
 The district court properly exercised its discretion to guard against the jury's becoming mesmerized by an "expert." A person qualified to give an opinion on one subject is not necessarily qualified to opine on others. Expert testimony, like any other testimony, must meet basic standards of relevance and pass muster under Rule 403. It is particularly appropriate for the trial judge carefully to weigh the potential for confusion in the balance when expert testimony is proffered. Jurors may well assume that an expert, unlike an ordinary mortal, will offer an authoritative view on the issues addressed; if what an expert has to say is instead tangential to the real issues, the jury may follow the "expert" down the garden path and thus focus unduly on the expert's issues to the detriment of issues that are in fact controlling.
 
 
 26
 The district court did not abuse its discretion in finding that Ay's testimony had only limited probative value that was substantially outweighed by being cumulative and misleading.
 
 B. Exclusion of Testimony on Dust Levels
 
 27
 Plaintiff sought to introduce portions of a videotaped deposition of Harry Dutton, a contractor who supplied insulation workers and materials to Kaiser during World War II,[1] to link asbestos dust levels at the Kaiser shipyards to asbestos dust levels at insulation factories. In those portions Dutton testified that he had visited several plants where defendants manufactured asbestos, and that the level of visible asbestos dust aboard ships at Kaiser was equal to or greater than the level of dust normally found at defendants' manufacturing facilities. Dutton's comparison was based on his personal observations rather than a scientific sampling. It was offered to establish that (1) Dutton observed dust levels at Kaiser; (2) Dutton observed dust levels at defendants' plants; (3) epidemiological studies at the plants of other manufacturers showed the asbestos exposure level for their workers to be X; (4) the dust level Dutton saw at defendants' plants was similar to the dust level he saw at the shipyard; therefore (5) the exposure level at Kaiser for Rogers was also X.
 
 
 28
 The district court excluded Dutton's comparison of the dust levels under Rule 403 because it found such evidence to be more misleading than probative. This exclusion was correct, because the plants Dutton visited were not part of any epidemiological study introduced at trial and there was no evidence of similarity between those plants and the plants subject to epidemiological study. The only relevance of the proffer was to show that the dust levels at Kaiser exposed Rogers to a risk similar to that of workers in those asbestos factories for which there were epidemiological studies. To make this comparison, however, required a connection for which there was no foundation: that the plants Dutton visited had the same dust levels as plants in the studies, and that an expert would rely on this "eyeball" comparison between defendants' plants and Kaiser in formulating an opinion that the exposure level experienced by Rogers at Kaiser was similar to the exposure level of workers at different plants for which there were epidemiological studies. The jury could have been confused by the comparison between Kaiser and asbestos manufacturing plants and misled into making the leap from defendants' plants to the plants for which there were studies, without foundation in the evidence.
 
 
 29
 Plaintiff likewise failed to make a threshold showing that the kind of eyeball comparison made by Dutton was reliable or useful. There was no evidence that the amount of asbestos in the air could be accurately estimated by a person casually walking through the area.
 
 
 30
 Plaintiff argues that she should have been able to introduce the Dutton comparison because other witnesses were permitted to make similar comparisons. However, no one objected to the use of epidemiological studies at manufacturing facilities to project a cancer risk at Kaiser, even though Kaiser workers were not included in those studies. Unlike the Dutton comparison, both sides laid an evidentiary foundation for their experts to draw conclusions based on similarities of time period, kind of work, and workers involved in the epidemiological studies and Rogers's work at Kaiser.
 
 
 31
 Given the tenuous link between what Dutton saw at plants for which there were no epidemiological studies and the exposure level at Kaiser for Rogers, the district court could reasonably find that plaintiff's proffered evidence lacked sufficient probative value to overcome its potential for confusion.
 
 
 32
 C. Use of Unidentified X-rays as Demonstrative Evidence
 
 
 33
 The district court allowed defense witness Dr. Norman Moscow to show the jury four x-rays for illustrative purposes; the x-rays were not formally admitted into evidence, however. The x-rays were of an unknown patient and purported to show pleural plaques. They were not listed in the pretrial order despite the fact that the court told the parties to list all items to be used at trial, regardless of whether they would be admitted into evidence.
 
 
 34
 Dr. Moscow used the x-rays to support his opinion that Rogers did not have a pleural plaque. He testified that plaques are round, like a rock, and can be seen from all x-ray angles, whereas Rogers's abnormality could only be seen from one view. The x-rays were used to demonstrate this difference.
 
 
 35
 Rule 16 of the Federal Rules of Civil Procedure provides that a final pretrial order controls the subsequent course of action in a trial unless modified "to prevent manifest injustice." See Fed.R.Civ.P. 16(e).[2] Local Rule 235-8 of the Northern District of California incorporates Federal Rule 16 and provides that "the parties shall, not less than seven calendar days prior to the date on which the trial is scheduled to commence: ... Exchange copies of all exhibits to be offered and all schedules, summaries, diagrams and charts to be used at the trial other than for impeachment or rebuttal."
 
 
 36
 Fibreboard and Keene argue that Federal Rule 16 and Local Rule 235-8 apply only to items offered into evidence, not to items used for demonstrative purposes. Plaintiff contends that both rules apply to demonstrative evidence as well and that, in any event, the district court's order expressly required the parties to identify all items to be used at trial, regardless of whether they would be admitted into evidence.
 
 
 37
 We need not resolve the issue of whether the federal and local rules apply to demonstrative evidence. Even if the district court did err in allowing use of the x-rays, an evidentiary error is not reversible unless refusing to reverse would cause substantial injustice. See Fed.R.Civ.Proc. 61. In this case, injury to the plaintiff was limited. The x-rays did not introduce new evidence; they were simply a more graphic version of what Dr. Moscow had said already. Plaintiff does not suggest that they were inaccurate or misleading.[3] Since the x-rays did not introduce any new evidence, and plaintiff did not show that they were inaccurate, the error, if any, is harmless.[4]
 
 IV
 CONCLUSION
 
 38
 The district court did not abuse its discretion in excluding plaintiff's expert Ay, or percipient witness testimony offered to link dust levels at Rogers's shipyard with dust levels at manufacturing plants by means of visual observations at defendants' facilities and Kaiser. Rule 403 is properly invoked with respect to opinion testimony by an expert or percipient witness. We need not decide whether the district court abused its discretion in allowing defendants for demonstrative purposes to use x-rays which were not part of the pretrial order. Under the circumstances no substantial injustice resulted and error, if any, is harmless.
 
 
 39
 AFFIRMED.
 
 
 
 [1]
 Dutton was unavailable to testify because he had Parkinson's disease
 
 
 [2]
 We have applied a three-part test to determine whether a party may present new evidence or testimony not contained in the pretrial order. Modification is permitted only when (1) the opposing party would not sustain substantial injury; (2) refusal might result in injustice; and (3) inconvenience to the court is slight. Angle v. Sky Chef, Inc., 535 F.2d 492, 495 (9th Cir.1976) (citing Sherman v. United States, 462 F.2d 577, 579 (5th Cir.1972)); see Seymour v. Summa Vista Cinema, Inc., 809 F.2d 1385, 1388 (9th Cir.) (upholding lower court's exclusion of evidence not in pretrial order), amended on other grounds, 817 F.2d 609 (1987); Campbell Indus. v. M/V Gemini, 619 F.2d 24, 27-28 (9th Cir.1980) (upholding exclusion of two expert witnesses)
 
 
 [3]
 Plaintiff also did nothing to cure any potential harm. She did not ask for a continuance to have her experts examine the x-rays or further to depose Dr. Moscow. Nor did she ask to present an expert for rebuttal. She contends that her experts had been excused and were no longer available
 
 
 [4]
 Plaintiff's further claim that the x-rays lacked a proper foundation is not persuasive. Dr. Moscow testified that these x-rays represented a typical view of a patient with pleural plaques. Plaintiff had the opportunity during cross-examination to explore her concerns about the credibility or authenticity of the x-rays