12 F.3d 1107
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
LILLIAN MARTINEZ, acting as administrator of the estate of
Alfonso Dutra on behalf of his heir, and acting on
behalf of the estate of Alfonso Dutra
Plaintiff-Appellant,
v.
CITY OF STOCKTON, CALIFORNIA; County of Joaquin, et al.,
Defendants-Appellees.
 No. 92-15013.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 4, 1993.
Decided Nov. 19, 1993.
 
 1
 Before: CANBY and NOONAN, Circuit Judges, and ORRICK*, District Judge
 
 
 2
 MEMORANDUM**
 
 
 3
 Lillian Martinez, sister of Alfonso Raymond Dutra and administrator of his estate, sued the City of Stockton and police officers Rocha, Townes, Sandoval, and Trullson, alleging that the officers wrongfully caused the death of her brother in connection with his arrest. A jury subsequently found the officers not liable. Martinez appealed, asserting error in numerous rulings of the district court.
 
 
 4
 This court has jurisdiction under 28 U.S.C. Sec. 1291, and we now AFFIRM.
 
 FACTS and PROCEEDINGS
 
 5
 On April 29, 1988 officers Rocha, Sandoval and Townes sought to arrest Dutra after purchasing two packets of heroin from him for the price of $20.00.
 
 
 6
 At issue in this case are the actions of the officers after Dutra broke away from them and ran out of the apartment building where the deal had been consummated. At some point Dutra placed in his mouth a third tinfoil packet of heroin. The officers pursued Dutra and grabbed him; one of the officers yelled something like "he swallowed it," and officer Townes grabbed Dutra by the throat. Officers Townes and Rocha, together with Dutra, tumbled to the street. Martinez's witness, Caesar Cuison, testified that he saw an officer administer a "knee drop" to Dutra as the other officers held Dutra in a sitting position. Another Martinez witness, Josephine Montes, did not claim to see a "knee drop," but testified that she saw the officers grab Dutra or jump on him and hit him on the back with the flat of their hands. All the officers denied kneeing Dutra or applying any excessive force.
 
 
 7
 On April 18, 1989 Martinez filed suit against the City of Stockton, the arresting officers, and the transporting officer, Trullson, in United States District Court for the Eastern District of California. Martinez alleged wrongful death, assault and battery, and negligence under California law, as well as deprivation of civil rights and conspiracy to deprive civil rights under 42 U.S.C. Sec. 1983. Trial began with jury voir dire on August 12, 1991. At the close of trial, the district court dismissed the claim of conspiracy under section 1983. On August 21, 1991 the jury returned a special verdict, finding the defendant officers not liable on all remaining claims. Judgment was entered on September 13, 1991.
 
 
 8
 On September 23, 1991, Martinez moved for a new trial; the motion was denied on November 18, 1991. On December 31, 1991 Martinez filed a timely notice of appeal.
 
 ANALYSIS
 
 9
 1. Martinez's Proposed Special Verdict Forms
 
 
 10
 Martinez submitted special verdict forms according to which the jury could have found the City of Stockton liable for state law battery and negligence even if the police officers were found not liable on all counts. The district court denied Martinez's motion to use the supplemented special verdict forms.
 
 
 11
 In California, the general rule is that in the context of respondeat superior "a judgment which holds the principal and exonerates the agent is 'self-stultifying' and must be reversed." B.E. Witkin, 2 Summary of California Law Sec. 116, 111 (9th ed. 1987) (emphasis original). Martinez seeks to avoid the thrust of the general rule by relying on Toney v. California, 54 Cal.App.3d 779 (1976), and Perez v. City of Huntington Park, 7 Cal.App.4th 817 (1992). This reliance is misplaced. In Toney, in contrast to this case, the principal's liability was independent of the agent's liability. 54 Cal.App.3d at 788. In Perez, meanwhile, there was no jury and the court specifically alluded to the danger of inconsistent verdicts in a jury trial. 7 Cal.App.4th at 821. Further, Perez is clearly distinguishable from this case because here, as the jury's verdict revealed, doubt remained not only as to which but as to whether any of the defendant police officers committed acts of excessive force. See id. at 820. The jury's verdict made clear that a judgment against the City of Stockton would have been "self-stultifying" and thus prohibited by the general California rule.
 
 
 12
 2. Martinez's Claim for Conspiracy under 42 U.S.C. Sec. 1983
 
 
 13
 A district court's grant of a directed verdict is reviewed de novo. McGonigle v. Combs, 988 F.2d 810, 816 (9th Cir.), cert. denied, 113 S.Ct. 399 (1992).
 
 
 14
 Martinez's conspiracy theory focuses on the collaboration between officers Rocha, Sandoval, and Townes in attempting to dislodge a packet of drugs that Dutra had swallowed. "In order to prove a civil conspiracy, the parties to have conspired must have reached a 'unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement.' " Vieux v. East Bay Regional Park District, 906 F.2d 1330, 1343 (9th Cir.), cert. denied, 498 U.S. 967 (1990) (citation omitted).
 
 
 15
 Evidence on the officers' common purpose is scarce. Only Cuison claimed to see the officers acting in concert to subdue Dutra, and even in Cuison's version of events it is difficult to gauge the degree of cooperation between the officers. In an action alleging conspiracy under 42 U.S.C. 1983, "each participant in the conspiracy need not know the exact details of the plan, but each must at least share the common objective of the conspiracy." United Steelworkers of America v. Phelps Dodge Corp., 865 F.2d 1539, 1541 (9th Cir.) (en banc), cert. denied, 493 U.S. 809 (1989). Martinez fails to make clear how, in the space of mere seconds, the officers arrived at a conspiracy. Martinez also fails to establish that the officers' common purpose, if any, was unlawful. The jury's verdict appears to negate any potential object of the conspiracy.
 
 
 16
 A directed verdict is proper "when the evidence permits only one reasonable conclusion as to the verdict." McGonigle, 968 F.2d at 816. Even drawing all inferences in favor of Martinez, as this court is required to do, there is not enough evidence on the conspiracy claim to merit consideration by a jury. The district court properly dismissed the conspiracy charge.
 
 
 17
 3. Jury Instructions on the Officers' Good Faith
 
 
 18
 According to Martinez, the district court's instructions permitted the jury to find the officers not liable on the grounds of subjective good faith. Martinez correctly notes that the proper standard for qualified immunity is an objective one: qualified immunity "is available to government officials if they could reasonably have thought that their actions were lawful in light of the clearly established law and the information they possessed." Vaughan v. Ricketts, 950 F.2d 1464, 1468 (9th Cir.1991). Martinez, however, misunderstands the jury instructions given by the district court. The court's instructions refer to "the surrounding circumstances as they would have reasonably appeared at the time" (emphasis added). The court instructed the jury that the defendants should be found not liable if they "had a reasonable and good faith belief that their actions were not going to violate the constitutional rights of plaintiff's decedent" (emphasis added). The objective standard for the qualified immunity defense was built into the district court's instructions, and consequently the court committed no abuse of discretion.
 
 4. Evidence of Dutra's Prior Convictions
 
 19
 Dutra's statements to the nurse, the doctor, and the police officers were hearsay. Fed.R.Evid. 801(c). For purposes of Federal Rule of Evidence 806, therefore, Dutra was a hearsay declarant. "Federal Rule of Evidence 806 permits attacks on the credibility of the declarant of a hearsay statement as if the declarant had testified." United States v. Becerra, 992 F.2d 960, 965 (9th Cir.1993) (emphasis added).
 
 
 20
 Ultimately Dutra's statements were admissible under Federal Rule of Evidence 609(a)(1). Martinez claims, without pointing to specifics, that Dutra was prejudiced by the prior conviction impeachment. On the other hand, because Dutra's complaints of pain and injury were central to his case against the City of Stockton, impeachment was appropriate. See United States v. Browne, 829 F.2d 760, 762-63 (9th Cir.1987), cert. denied, 485 U.S. 981 (1988). Regardless, the district court committed no abuse of discretion because any error here was not likely to have affected the verdict. United States v. Emmert, 829 F.2d 805, 808 (9th Cir.1987).
 
 5. Dutra's Dying Declaration
 
 21
 For his words to be admissible as a dying declaration, "[t]he patient must have spoken with the consciousness of a swift and certain doom." Shepard v. United States, 290 U.S. 96, 100 (1933). On May 4, 1988 Dutra was miserable but there is no showing that he believed he was about to die. His words, "I'm going to be with momma now," are ambiguous. The court did not abuse its discretion in excluding the declaration.
 
 6. The Coroner's Autopsy Report
 
 22
 Quite apart from whether autopsy reports are admissible under the business records exception to the hearsay rule, see Manocchio v. Moran, 919 F.2d 770, 776 (1st Cir.1990), cert. denied, 111 S.Ct. 1695 (1991), the district court could have excluded the autopsy report on the grounds that it was cumulative. Fed.R.Evid. 403. In performing the balancing test required by Rule 403, "[t]he district court has considerable latitude." Rogers v. Raymark Industries, Inc., 922 F.2d 1426, 1430 (9th Cir.1991). Here, Martinez points to no especially probative feature of the report. Because the proposition for which Martinez offered the report was well established, the court committed no abuse of discretion in excluding the report itself.
 
 
 23
 7. The Deposition Testimony of Dakotah Mardock
 
 
 24
 Federal Rule of Civil Procedure 32(a)(3)(E) permits deposition testimony to be used in court where there are "exceptional circumstances." Martinez bears the burden of showing "exceptional circumstances," Allgeier v. United States, 909 F.2d 869, 876 (6th Cir.1990), but here she makes no such showing. Mere hostility on the part of the witness does not qualify as an "exceptional circumstance." Klepal v. Pennsylvania R. Co., 229 F.2d 610, 612 (2d Cir.1956). Rule 32 states a preference for live testimony. And most importantly, the district court expressed cogent reasons--including the jury's inability to assess Mardock's credibility--for excluding the testimony. The district court did not commit an abuse of discretion.
 
 8. Individual Voir Dire
 
 25
 "Discretion is not properly exercised if the [voir dire] questions are not reasonably sufficient to test the jury for bias or partiality." United States v. Dischner, 974 F.2d 1502, 1522 (9th Cir.1992), cert. denied, 113 S.Ct. 1290 (1993) (citation omitted). Martinez points to no authority holding that individual as opposed to group questioning is required. The district court's questions at voir dire mentioned heroin; they sought to draw out prejudice against users of heroin. There was no abuse of discretion.
 
 
 26
 We AFFIRM the rulings of the district court.
 
 
 
 *
 Honorable William H. Orrick, Jr., Senior District Judge for the Northern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3