1 F.3d 1362
 37 Fed. R. Evid. Serv. 783, Prod.Liab.Rep.(CCH)P. 13,542
William DUNN; Hess Oil Virgin Islands Corp.
v.
HOVIC; Amerada Hess Corp.; Keene Corporation
v.
The LITWIN CORPORATION; Litwin PanAmerican; Borinquen
Insulation Co.
Owens-Corning Fiberglas Corporation, Appellant.
 No. 91-3837.
 United States Court of Appeals,
Third Circuit.
 Argued April 22, 1992.
Decided July 27, 1993.
 
 Barry S. Simon (argued) and Paul Mogin, Williams & Connolly, Washington, DC, for appellant.
 Joel H. Holt (argued), Christiansted, VI and Paul S. Minor, Minor & Guice, Biloxi, MS, for appellee.
 Before: SLOVITER, Chief Judge, MANSMANN and WEIS, Circuit Judges.
 OPINION OF THE COURT
 SLOVITER, Chief Judge.
 
 Preliminary Note
 
 1
 On April 22, 1992 a panel of this court heard argument on the appeal of Owens-Corning Fiberglas Corporation (OCF) from the judgment of the district court awarding William Dunn $500,000 in compensatory damages for asbestos-related injury and $2 million in punitive damages. The opinion of the panel, affirming the district court's award of compensatory damages and ordering a remittitur of the punitive damages award to $1 million, was filed on September 18, 1992.
 
 
 2
 Thereafter, OCF filed a petition for rehearing in banc. On October 8, 1992, the court granted the petition and vacated the opinion of the panel. However, the petition was directed only to the punitive damages award and the court subsequently directed counsel to limit their arguments at the rehearing in banc to that issue. Accordingly, the court in banc has amended its October 8, 1992 order to the extent that it vacated the panel opinion in its entirety, and the panel hereby reinstates the portion of its earlier opinion addressing the compensatory damages and evidentiary issues raised by OCF with only minor editorial changes. A separate opinion of the court in banc will be issued limited to the punitive damages award.
 
 I.
 PROCEDURAL POSTURE
 
 3
 In 1987 William Dunn, a former pipe installer at Hess Oil Virgin Islands Corporation (HOVIC), filed this action against OCF as well as other manufacturers of asbestos-containing products, alleging personal injuries caused by exposure to asbestos. Following a trial in which liability and compensatory damages were determined before the issue of punitive damages, the jury awarded Dunn $1.3 million in compensatory damages and $25 million in punitive damages against the sole remaining defendant, OCF, the distributor and later manufacturer of Kaylo, an asbestos-containing pipecovering.
 
 
 4
 OCF filed post-trial motions pursuant to Federal Rules of Civil Procedure 50(b) and 59 requesting a Judgment Notwithstanding the Verdict or, in the alternative, a new trial. The district court denied the motion for JNOV, but conditioned the denial of the motion for a new trial on Dunn's acceptance of a remittitur of the compensatory award to $500,000 and the punitive award to $2 million. Dunn v. Owens-Corning Fiberglass, 774 F.Supp. 929, 951-52 (D.V.I.1991). Dunn accepted the remittitur, and OCF appeals. We have jurisdiction under 28 U.S.C. Sec. 1291 (1988).
 
 II.
 STANDARD OF REVIEW
 
 5
 In ruling on a motion for JNOV, the district court must view the evidence, together with all reasonable inferences therefrom, in the light most favorable to the verdict winner. Rotondo v. Keene Corp., 956 F.2d 436, 438 (3d Cir.1992). We apply the same standard on appeal as the district court, id., and will affirm the denial of the motion "unless the record is critically deficient of that minimum quantum of evidence from which a jury might reasonably afford relief." Dawson v. Chrysler Corp., 630 F.2d 950, 959 (3d Cir.1980) (internal quotations omitted), cert. denied, 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981).
 
 
 6
 We review the denial of a motion for a new trial for abuse of discretion, Ford Motor Co. v. Summit Motor Prods., Inc., 930 F.2d 277, 290 (3d Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 373, 116 L.Ed.2d 324 (1991), and note that "the district court ought to grant a new trial on the basis that the verdict was against the weight of the evidence only where a miscarriage of justice would result if the verdict were to stand." Williamson v. Consolidated Rail Corp., 926 F.2d 1344, 1352 (3d Cir.1991). In addition, "we may disturb the district court's determination with respect to a remittitur only for abuse of discretion, and reverse and grant a new trial only if the verdict is so grossly excessive as to shock the judicial conscience." Gumbs v. Pueblo Int'l, Inc., 823 F.2d 768, 771 (3d Cir.1987) (internal quotations omitted).
 
 III.
 DISCUSSION
 
 7
 Rather than focus its appeal on liability, OCF raises numerous issues going to damages. We address in subpart A the compensatory damages issues and in subpart B the evidentiary issues, which implicate both compensatory and punitive damages.A.
 
 COMPENSATORY DAMAGES
 1. Sufficiency of the Evidence
 
 8
 From the evidence presented at trial, the jury could reasonably have concluded the following. In 1950 Dunn went to work as a pipe installer's helper for Dow Chemical in Texas. App. at 846-47. After working in various places in the United States and the Caribbean, Dunn began working at the Hess Oil refinery in St. Croix, Virgin Islands in 1966 as a pipe installer. App. at 859-64. He testified that as a result of his duties, which often required cutting, sawing or pounding of asbestos-containing insulation, he was covered from head to toe in dust from early morning until he left work. App. at 868-69. Dunn identified OCF's Kaylo as the asbestos-containing insulation product he used most.[1] App. at 870.
 
 
 9
 Beginning in the mid-1980s, Dunn began to experience shortness of breath and weight loss. App. at 878-79, 888. He was diagnosed as suffering from "a lung condition ... caused by asbestos." App. at 879. Prior to that time Dunn enjoyed a variety of athletic activities, including running, swimming, biking, and weight lifting. App. at 876. He claims that because of his lung disease, he can no longer engage in the athletic activities he enjoyed previously. App. at 889. Dunn testified about his great fear of contracting cancer in the future and his depression at seeing long-time friends die of asbestos-related disease. App. at 889-92.
 
 
 10
 Dunn asked for compensatory damages for present and future pain and suffering, including compensation for his fear of contracting cancer. OCF contends that Dunn did not adduce enough evidence at trial to show that he suffers from compensable injury. In particular, OCF claims that under the American Thoracic Society standards for diagnosing asbestosis, the evidence presented at trial demonstrates that Dunn does not exhibit the conditions necessary for a diagnosis of asbestosis.
 
 
 11
 Under the Virgin Islands Code, in the absence of local law to the contrary, the Restatements of the law approved by the American Law Institute control. V.I.Code Ann. tit. 1, Sec. 4 (1967); see Berroyer v. Hertz, 672 F.2d 334, 340 (3d Cir.1982). OCF notes that Restatement (Second) of Torts sections 388 and 402A make "harm" an essential element of claims for negligence and strict liability. However, section 7(2) defines "harm" as "the existence of loss or detriment in fact of any kind to a person resulting from any cause." Restatement (Second) of Torts Sec. 7(2) (1965). Comment b explains that " '[h]arm' implies a loss or detriment to a person, and not a mere change or alteration in some physical person, object or thing.... In so far as these acts or conditions are detrimental to him, he suffers harm." Id. cmt. b.
 
 
 12
 It is undisputed that Dunn has extensive pleural thickening on the exterior of his lungs. See App. at 661-62, 762-63. OCF nevertheless argues that the presence of pleural plaques does not constitute compensable injury, citing Purjet v. Hess Oil Virgin Islands Corp., 22 V.I. 147, 149, 1986 WL 1200 (D.V.I.1986), for the proposition that Dunn must prove "[a]ctual injury or damage" to recover. In that case, plaintiffs, neither of whom suffered from any asbestos-related condition, brought a suit seeking, inter alia, damages for enhanced risk of developing asbestos-related diseases. In granting summary judgment for the defendants, the district court held that under Virgin Islands law, "a tort claim will not lie in the absence of a demonstrable injury [and] mere exposure to asbestos is insufficient to state a cause of action." Id. at 154; see also Schweitzer v. Consolidated Rail Corp., 758 F.2d 936, 942 (3d Cir.) (for purposes of F.E.L.A. claim, "manifest injury [is] a necessary element of an asbestos-related tort action"), cert. denied, 474 U.S. 864, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985).
 
 
 13
 We need not decide in this case whether the mere presence of pleural plaques constitutes the "harm" necessary to recover damages for tort under the Restatement. We note that more recent cases applying the law of states within this circuit have held that it is. Thus, in Marinari v. Asbestos Corp., 417 Pa.Super. 440, 612 A.2d 1021 (1992), the Pennsylvania Superior Court, sitting in banc, held that "pleural thickening, even when asymptomatic, is an injury which gives rise to a cause of action."[2] Id. at 1028.
 
 
 14
 Two medical experts testified on Dunn's behalf. Dr. David Egilman, who is board certified in internal and occupational medicine with a specialty in occupational lung disease, see App. at 156, stated that Dunn had "the exact injuries that you would expect if someone was injured from breathing in the asbestos." App. at 164. He also stated that he was "certain that [Dunn] has asbestos-related lung disease, both in the lung tissue and around the lung," and concluded that Dunn suffers from asbestosis. App. at 297.
 
 
 15
 Dunn's other expert witness, Dr. David Kern, also certified in occupational and internal medicine, concurred in this diagnosis, stating that Dunn "definitely did have asbestosis." App. at 666. Both experts testified that when they examined Dunn's lungs they heard rales, a velcro-like sound indicative of asbestosis. App. at 294-95, 680. These observations mirrored that of the first doctor to examine Dunn in 1985. App. at 294.
 
 
 16
 Dr. William Cole, OCF's radiology expert, testified that the outer lining of Dunn's lungs displayed pleural plaques and that asbestos exposure was probably the cause. App. at 762-63, 765. This same conclusion was reached by Dr. Kern who stated that Dunn's pleural plaques were massive. App. at 662. Dr. Kern also testified that pleural plaques "have an effect on lung function." App. at 661. Dr. Cole agreed that in an advanced stage, pleural plaques could affect lung functioning. App. at 818.
 
 
 17
 Thus, in this case, there is evidence, if believed, that Dunn suffers from more than mere pleural plaques. In the first place, Dunn's plaques "are massive." App. at 662. Dunn "ha[s] both scarring of the lining of the lung, both in front and on the muscle that's under the lung. And he also has scarring in the lung tissue." App. at 272. In the second place, and more important, Dunn's experts testified that as a result of his exposure to asbestos, Dunn has reduced lung capacity. Tests performed demonstrated that Dunn's lung capacity decreased by about 20% between 1985 and 1989 and that a further decrease occurred between 1989 and 1990. App. at 277-78. Dr. Egilman testified that Dunn's disease was progressing at a rapid rate and that his total lung capacity would continue to decrease. App. at 299. According to both Drs. Egilman and Kern, such a decrease is abnormal and consistent with a diagnosis of asbestosis. App. at 279-80, 668-70.
 
 
 18
 Furthermore, in 1989, a small nodule was discovered on Dunn's lower left lung. App. at 288-89, 890. Although Dr. Egilman did not believe it was malignant at that time, he recommended that it be examined and x-rayed every three to five months. App. at 290-91. Finally, Dr. Egilman testified that Dunn had a greater than fifty percent chance of dying from an asbestos-related disease and that Dunn's fear of contracting cancer was reasonable. App. at 300.
 
 
 19
 While OCF did present colorable evidence tending to contradict the conclusions of Dunn's experts, it was not so overwhelming that the jury could not reasonably conclude that Dunn suffers from mild asbestosis which is likely to worsen. As the district court properly noted, "[i]t was well within the jury's province to decide to credit the testimony of plaintiff's doctors while discounting that of defendant's." Dunn, 774 F.Supp. at 937. Dunn's shortness of breath and inability to engage in the extent of physical activity he enjoyed previously are detrimental effects that constitute sufficient "loss or detriment" to justify an award of compensatory damages.
 
 
 20
 In Herber v. Johns-Manville Corp., 785 F.2d 79 (3d Cir.1986), a case brought by a plaintiff with pleural thickening, we ruled that under New Jersey law a plaintiff need only demonstrate "slight impact and injury ... to warrant recovery for emotional distress caused by fear." Id. at 85; see Sullivan v. Combustion Eng'g, 248 N.J.Super. 134, 590 A.2d 681, 683 (Ct.App.Div.) (citing Herber with approval), cert. denied, 126 N.J. 341, 598 A.2d 897 (1991). Thus, even assuming Dunn does not suffer from asbestosis, the jury was free to conclude that notwithstanding OCF's evidence of Dunn's physical activity, the physical impact of Dunn's pleural plaques caused enough harm to warrant recovery, particularly when combined with the anxiety associated with the fear of cancer.[3] See McCleary v. Armstrong World Indus., Inc., 913 F.2d 257, 258 (5th Cir.1990) (upholding under Texas law jury verdict in asbestos case where plaintiff suffered from "pleural fibrosis"); Dartez v. Fibreboard Corp., 765 F.2d 456, 468 (5th Cir.1985) (accumulation of asbestos fibers in lungs sufficient injury under Texas law to support claim for fear of cancer).
 
 
 21
 2. Excessiveness of the Remitted Compensatory Damages Award
 
 
 22
 OCF asks this court for further remittitur of the district court's compensatory damages award, arguing that comparison to awards in similar cases and that lack of proof of special damages demonstrate the excessiveness of the remitted $500,000 compensatory award. Admittedly, $500,000 is generous, but it certainly is not the highest award of its kind, see App. at 1842, 1843, 1918, 1919, 1921, and does not shock our judicial conscience. Given our deferential scope of review, see Gumbs, 823 F.2d at 771, we conclude that the district court did not abuse its discretion in granting a remittitur to $500,000.[4]
 
 B.
 EVIDENTIARY ISSUES
 1. Testimony of Dunn's Expert Witness
 
 23
 OCF argues that both the punitive and compensatory damages awards should be reversed because of the district court's evidentiary rulings under Federal Rule of Evidence 702.[5] This court reviews evidentiary rulings under Rule 702 for abuse of discretion. See United States v. Leo, 941 F.2d 181, 188 (3d Cir.1991). We have explained that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected...." Fed.R.Evid. 103(a); see also Linkstrom v. Golden T. Farms, 883 F.2d 269, 269 (3d Cir.1989). We "will interpret possible helpfulness to the trier of fact broadly and will favor admissibility in doubtful cases." Linkstrom, 883 F.2d at 270; see also American Technology Resources v. United States, 893 F.2d 651, 655 (3d Cir.) (helpfulness standard interpreted broadly), cert. denied, 495 U.S. 933, 110 S.Ct. 2176, 109 L.Ed.2d 505 (1990); Breidor v. Sears, Roebuck & Co., 722 F.2d 1134, 1139 (3d Cir.1984) ("[h]elpfulness is the touchstone of Rule 702").
 
 
 24
 We have previously expressed our view that in most cases " '[t]he jury is intelligent enough, aided by counsel, to ignore what is unhelpful in its deliberations,' " and noted that " 'even when jurors are well equipped to make judgments on the basis of their common knowledge and experience, experts may have specialized knowledge to bring to bear on the same issue which would be helpful.' " In re Japanese Elec. Prods. Antitrust Litig., 723 F.2d 238, 279 (3d Cir.1983) (quoting 3 J. Weinstein & M. Berger, Weinstein's Evidence pp 702, 702, rev'd on other grounds, 475 U.S. 574 (1986). Finally, "to the extent that [OCF implies] that expressions of opinion on the ultimate fact in issue somehow impermissibly invade the province of the jury, it is inconsistent with the clear mandate of Rule 704." Id. (citation omitted).[6]
 
 
 25
 With these general principles in mind we address the issues raised by OCF. Dunn's principal expert witness, Dr. Egilman, is an M.D. who specializes in occupational medicine, i.e., the diagnosis and treatment of problems related to exposure to chemicals or other substances. App. at 131. The record reveals that Dr. Egilman takes referrals from companies to evaluate workers for illnesses that have occurred in the workplace. App. at 138. Dr. Egilman also conducts medical surveillance for companies to determine whether employees may be unduly exposed to toxic substances. App. at 139. Finally, he assists companies in analyzing information to determine whether or not substances used are harmful. When harmful substances are encountered, he instructs these companies as to
 
 
 26
 how they should be properly handled, how workers should be educated about how to work with them so they won't get hurt, how warnings should be put on them and, in some cases, how the community physicians need to be informed.
 
 
 27
 App. at 139.
 
 
 28
 OCF claims that it was improper for Dr. Egilman to comment from his review of OCF's corporate records that OCF knew of the risks associated with exposure to asbestos. App. at 619. In light of our broad view of the "helpfulness" standard of Rule 702 and Dr. Egilman's particular experience in working directly with employers on issues of this general concern, we find no abuse of discretion as to the admission of this testimony under Rule 702.
 
 
 29
 OCF also challenges the admission of Dr. Egilman's testimony that
 
 
 30
 based on what they [OCF] knew in the 40's and 50's, what they could have known and didn't know, they clearly did not meet the obligation of the standard that they knew and presented in this memo in 1941.
 
 
 31
 App. at 316.
 
 
 32
 The document referred to in Dr. Egilman's testimony is a 1941 OCF memorandum discussing whether "Fiberglas," then a new material, could be safely offered to industry. The OCF memorandum states that "those who are engaged in the manufacture of Fiberglas [sic] necessarily must have reassured themselves about the health aspects of the material before offering it for sale--for two reasons": first, from a "humanitarian point of view, no company can afford to subject its employees to an unknown hazard" and second, from "a cold business view," because of concern about liability from users. App. at 2150A-E. The memo then discusses in depth research into the potential health hazards of fiberglass. Thus, Dr. Egilman's testimony expressed his own belief that OCF's conduct with respect to Kaylo did not meet its own self-imposed standard. Again, such commentary was not so inappropriate that we must hold that the district court abused its discretion in admitting this testimony.[7]
 
 
 33
 OCF also argues that it was improper for Dr. Egilman to state his conclusion that OCF was "the last company to put warnings" on its asbestos product and that those warnings did not appear on OCF materials until 1972. App. at 316. We agree with OCF. The jury did not need expert opinion to evaluate when OCF put warning labels on its Kaylo product.
 
 
 34
 Nevertheless, we conclude that such error was harmless. In particular, we note the testimony of Dunn, App. at 870-74, and his product identification witness, Mr. McComely Bully, App. at 631-32, that they did not recall seeing warning labels on the Kaylo boxes. In addition, OCF vigorously disputed Dr. Egilman's contention during the trial, see App. at 1235-39, and was not substantially prejudiced by this isolated remark.
 
 
 35
 The admissibility of particular expert testimony must be evaluated on review in the context of the entire case. For that reason, cases from other circuits on which OCF relies are not very helpful. Thus, for example, in Andrews v. Metro N. Commuter R.R. Co., 882 F.2d 705, 708 (2d Cir.1989), cited by OCF, the court vacated the plaintiff's jury verdict in part because the expert testimony referred to facts that were not in evidence and expressed his belief that the railroad was negligent, a patently improper statement. See Fed.R.Evid. 704 advisory committee's notes (improper for expert to tell jury what result to reach). In contrast, OCF does not contend that Dr. Egilman referred to facts not in evidence. Moreover, we do not view Egilman's testimony as telling the jury the ultimate result to reach. Cf. McGowan v. Cooper Indus., Inc., 863 F.2d 1266, 1272 (6th Cir.1988) (approving district court's exclusion of expert's proposed testimony, which included conclusion that defendant was negligent). We will not reverse the verdict based on his testimony.
 
 2. The Hemeon Report
 
 36
 OCF also contends that it was reversible error for the district court to admit the Asbestos Textile Institute's unpublished Hemeon Report. Specifically, OCF argues that the report was irrelevant under Federal Rule of Evidence 402 and that its prejudicial impact outweighed its probative value, warranting exclusion under Federal Rule of Evidence 403.[8]
 
 
 37
 Rulings under Rule 403 are reviewed for abuse of discretion, see In re Japanese Elec. Prods. Litig., 723 F.2d at 260, and, as we noted in our recent opinions, so are relevancy determinations under Rule 402. See Pfeiffer v. Manion Center Area Sch. Dist., 917 F.2d 779, 781 (3d Cir.1990); Anderson v. Pittsburgh--Des Moines Corp., 893 F.2d 638, 641 (3d Cir.1990).
 
 
 38
 The Hemeon Report questioned whether the then-generally acknowledged threshold limit value for levels of exposure to asbestos provided assurances of safety. Prior to this report, both the 1938 Dreessen study, prepared under the direction of the Surgeon General, and the 1946 Fleisher-Drinker study indicated that asbestosis would not result if asbestos dust were kept below 5 million particles per cubic foot of air. In 1946, the American Conference of Government Industrial Hygienists promulgated a threshold limit value of 5 million particles per cubic foot, which became widely accepted.
 
 
 39
 According to comment j of the Restatement section 402A, a manufacturer is liable for danger of which the manufacturer "has knowledge, or by application of reasonable, developed human skill and foresight, should have knowledge." Restatement (Second) of Torts Sec. 402A cmt. j (1965) (emphasis added). The comment to section 12 of the Restatement further states, in relevant part:
 
 
 40
 "[S]hould know" implies that the actor owes another the duty of ascertaining the fact in question.... "Should know" indicates that the actor is under a duty to another to use reasonable diligence to ascertain the existence or non-existence of the fact in question and that he would ascertain the existence thereof in the proper performance of that duty.
 
 
 41
 Id. at Sec. 12 cmt. a. Dunn argued that the Hemeon report was admissible as evidence of what OCF should have known concerning the dangers associated with exposure to asbestos.
 
 
 42
 We find persuasive the analysis of the Second Circuit in George v. Celotex Corp., 914 F.2d 26, 28-31 (2d Cir.1990), where the court held that the district court did not abuse its discretion in admitting the Hemeon Report in an asbestos case against Celotex Corporation, a company which, like OCF, was not a member of the Asbestos Textile Institute. As in this case, there was no evidence on the record in George to indicate that Celotex ever had access to the report. In applying New York strict liability law, which " 'generally follows the guidelines set forth in Sec. 402A [of the Restatement],' " id. at 28 n. 1 (quoting Farina v. Niagara Mohawk Power Corp., 81 A.D.2d 700, 438 N.Y.S.2d 645, 646 (1981)), the court concluded that the report was relevant to show "what, if the jury so determined, Celotex reasonably should have known had it either conducted its own tests or been in contact with others in the industry ... that were testing." Id. at 29. This rationale applies with equal strength here.
 
 
 43
 With respect to Celotex's argument that the prejudicial impact of the report outweighed its probative value, the court concluded that "[a]ny prejudice to Celotex was derived from the Hemeon Report's probative force and thus did not unfairly prejudice Celotex." Id. at 31. Once again, the same is true in this case. OCF argues that George is distinguishable because the court applied a "could have known" rather than a "should have known" standard in that case. However, we find no support for that subtle distinction in the George opinion.
 
 
 44
 OCF refers us to Lohrmann v. Pittsburgh Corning Corp., 782 F.2d 1156 (4th Cir.1986) (applying Maryland law), and Murphy v. Owens-Illinois, Inc., 779 F.2d 340 (6th Cir.1985) (applying Tennessee law), cases in which the admissibility of the Hemeon report was not in issue. Instead, in these cases the courts merely upheld the respective district courts' exclusion of certain other documents and testimony.[9] Many of the asbestos cases are based on the same general body of industry documents, and the courts of appeals have tended to uphold the discretionary rulings, albeit different, of the trial courts. Compare Lohrmann, 782 F.2d at 1159-60 (holding that district court did not abuse its discretion in excluding documents gathered by Sumner Simpson, a former president of Raybestos Manhattan (now Raymark)), with King v. Armstrong World Indus., Inc., 906 F.2d 1022, 1025 (5th Cir.1990) (no abuse of discretion in admitting Sumner Simpson papers as they are "relevant to the issue of what knowledge was scientifically discoverable by the industry as a whole at a certain time"), cert. denied, --- U.S. ----, 111 S.Ct. 2236, 114 L.Ed.2d 478 (1991).
 
 
 45
 In light of the relevance of the Hemeon Report to what OCF "should have known" concerning the dangers associated with asbestos, and the absence of unfair prejudice to OCF, we find no abuse of discretion in its admission.
 
 IV.
 CONCLUSION
 
 46
 For the foregoing reasons we will affirm the district court's order denying OCF's motion for Judgment NOV and remitting the compensatory damage award to $500,000.
 
 
 47
 WEIS, Circuit Judge, dissenting.
 
 
 48
 Concerns about a limited fund in some respects must color a court's consideration of compensatory damage verdicts as well as punitive damage awards. Just as imposition of inequitable exemplary damages diminish the assets that should be available for future claimants, so do excessive compensatory awards. A sense of fairness requires that trial and appellate court reviews of jury verdicts incorporate some necessarily rough equality of treatment for similarly injured individuals. Absolute equality is impossible, but in a broad range some attempt to temper aberrations is appropriate.
 
 
 49
 It is apparent that in this case the compensatory verdict of $1.3 million was grossly excessive. Recognizing that the trial judge reduced the award, I would nevertheless reduce it somewhat further.
 
 
 50
 The plaintiff specifically disavowed any claims for present or future wage losses. Indeed, he relied on these limitations on recovery in objecting successfully to defense cross-examination about his current employment.
 
 
 51
 The extent of the plaintiff's disability was hotly contested and the expert testimony sharply conflicting. As might be expected, the medical experts disagreed on the state of the plaintiff's health. Lacking medical backgrounds, the jurors, therefore, were left to choose between the differing evaluations prepared in anticipation of trial.
 
 
 52
 There was, however, documentary evidence in the case that was not consciously prepared for use at the trial. That evidence provides an assessment of the plaintiff's health that does not support the existence of the extensive injury on which the jury must have rested its large award.
 
 
 53
 The plaintiff was admitted for surgeries on his knee and shoulder during the spring of 1990, approximately six months before the trial began in November of 1990. The records of the surgeon and hospital in Texas are not concerned with whether the plaintiff was suffering with asbestosis, but they do give a revealing picture of Mr. Dunn's general health at the time.
 
 
 54
 The reports of the attending surgeon, Dr. Orth, describe the plaintiff's athletic activities including running, rowing, swimming, and weight lifting. The physician's notes comment that "[h]e has had to give up running recently because of swelling in his left knee" and would "like to have arthroscopic evaluation to see how the interior of his knee stood in arthritic fashion, and to determine what his future athletic activities should include."
 
 
 55
 Two months before the trial began, the doctor, in the last of his notes, wrote that the plaintiff had "been very busy in his work, doing a substantial amount of activities. He states that occasionally he will have to do some heavy work."
 
 
 56
 The impression gained from these rather extensive records is of a man who was, and intends to be, more physically active than most men of his age. That picture is not one of an individual who has such a substantial injury and disability as to justify the large verdict awarded here.
 
 
 57
 When this evidence is considered, along with testimony that the plaintiff was able to work, was gainfully employed at the time of trial, and made no claim for future loss of earnings, the excessiveness of the verdict becomes clear. On the record here, it seems to me that the trial judge's reduction of the $1.3 million verdict to $500,000 was not enough. I would reduce the verdict even further to $100,000, a sum which is substantially in excess of the average jury award or settlement figure for injuries of the nature that the plaintiff claims.
 
 
 58
 I, therefore, dissent from the majority's affirmance of the judgment entered by the trial judge on the compensatory award.
 
 
 
 [1]
 The parties stipulated that from 1953 through 1972, Kaylo contained an average of 15 percent asbestos. App. at 963, 1068
 
 
 [2]
 In light of the evidence in this case we need not decide the effect of Marinari on our earlier decision in Howell v. Celotex Corp., 904 F.2d 3, 5 (3d Cir.1990), that under Pennsylvania law the determination of whether pleural thickening constitutes compensable injury is for the trier of fact
 
 
 [3]
 In Jackson v. Johns-Manville Sales Corp., 781 F.2d 394 (5th Cir.) (in banc), cert. denied, 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986), the court stated:
 [Plaintiff's] fear is plainly a present injury. It is a fear which he experiences every day and every night. It is a fear which is exacerbated each time he learns that another victim of asbestos has died of lung cancer. It is fear which, regardless of whether [plaintiff] actually gets cancer, will haunt him for the rest of his life.
 Id. at 414 (footnote omitted). These words are equally applicable to Dunn.
 
 
 [4]
 OCF argues that the size of the jury's initial $1.3 million award alone indicates passion or bias requiring a new trial. We disagree. Other juries have awarded such sums in similar cases, see, e.g., App. at 1843 ($1.091 million awarded to plaintiff with asbestosis), and we find nothing in the record suggesting bias or prejudice
 
 
 [5]
 This rule permits expert testimony, "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue...." Fed.R.Evid. 702. The commentary to this rule further explains: "The rule ... recognizes that an expert on the stand may give a dissertation or exposition of scientific or other principles relevant to the case, leaving the trier of fact to apply them to the facts." Id. at advisory committee's note
 
 
 [6]
 Rule 704 states in pertinent part:
 (a) Except as provided in subsection (b), testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.
 Fed.R.Evid. 704.
 
 
 [7]
 OCF also challenges Dunn's follow-up question, which asked whether that statement represented Dr. Egilman's "opinion to a reasonable medical probability as a health hazard consultant to industry." App. at 316. We view this question as nothing more than Dunn's attempt to underscore Dr. Egilman's qualifications. Even assuming that the question was improper, OCF did not object to it, and we do not find it so prejudicial as to constitute plain error
 
 
 [8]
 Under Rule 403,
 [a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
 Fed.R.Evid. 403.
 
 
 [9]
 The Hemeon Report contains no prejudicial exhortations of the type that characterized the testimony which the court of appeals found "highly prejudicial" in Murphy. 779 F.2d at 344