**MORTIMER DAVIS, Appellant**
**v.**
**MELVIN CHRISTIAN, Appellee**
**DAVIS v. CHRISTIAN**
D.C. Civ. App. No. 2001/095

District Court of the Virgin Islands

Division of St. Croix

April 15, 2005

*For Appellant*: YVETTE D. ROSS-EDWARDS, ESQ.,[1] St. Croix, U.S.V.I.

*For Appellee*: RENEE DOWLING, ESQ., St. Croix, U.S.V.I.

FINCH,[2] *Chief Judge, District Court of the Virgin Islands*; MOORE,[3] *Judge of the District Court of the Virgin Islands*; and THOMAS, *Judge of the Territorial Court*,[4] *Sitting by Designation*

---

[1] Attorney Ross-Edwards assumed this and other matters from former counsel of record, the Honorable George W. Cannon.

**MEMORANDUM OPINION**

(April 15, 2005)

Following trial, a jury found appellant liable for an assault and battery against the appellee and awarded damages totaling $25,000: $15,000 for compensatory harm and $10,000 for exemplary damages. Davis now challenges the trial court's denial of his post-trial motion for judgment as a matter of law, new trial or, in the alternative, for remittitur of the jury's damage award. He presents the following issues for review:

1) Whether the trial court erred in permitting the jury to consider punitive damages, in the absence of evidence at trial regarding the appellant's financial condition;

2) Whether the evidence adduced at trial was insufficient to support the jury's verdict, and;

3) Whether the trial court erred in dismissing the appellant's counterclaim for assault and battery.

For the reasons stated below, we find the trial court's decision on the appellant's counterclaim and the sufficiency of the evidence to support a finding of liability sustainable under applicable law. However, we will remand for further consideration on the issue of punitive damages. Although, as discussed below, evidence of net worth is not a mandatory element of proof to be put to the jury as the appellant claims, there is still a requirement that the reasonableness of the award be tested meaningfully on post-trial and appellate review. Such review necessarily requires independent analysis and factfinding by the trial court regarding the defendant's ability to pay. Because the trial court denied the appellant's post-verdict motion for judgment notwithstanding the verdict or remittitur without consideration of the appellant's financial condition and other relevant factors, we will reverse the court's denial of the motion and remand for further consideration consistent with this opinion.

---

[2] The Honorable Raymond L. Finch was recused from considering this matter.

[3] The Honorable Thomas K. Moore participated in this decision prior to his retirement on January 3, 2005.

[4] The Territorial Court is now the Superior Court of the Virgin Islands.

## I. STATEMENT OF THE FACTS AND PROCEDURAL POSTURE

Appellee Melvin Christian ("Christian", "appellee") brought an action for damages in the Territorial Court following an altercation with Mortimer Davis ("Davis", "appellant"), in which he claimed he was assaulted and suffered resulting injuries. The facts surrounding the altercation were largely disputed at trial, both parties offering wildly dissimilar versions of what occurred.

Davis acknowledged at trial there was considerable animus between the two, which had developed over a period of years when the two served together in the Virgin Islands Fire Department. Even after Davis retired in 1988 from his position as Fire Chief in the department, however, there was testimony that the problems between Davis and Christian continued. Davis claims that, on the day of the altercation—April 5, 1991—he was standing outside a small grocery store near the Frederiksted Post Office when he suddenly heard a voice behind him saying, "Look at that old man." [Joint Appendix ("J.A.") at 410]. He recognized the voice to be that of the appellee and turned around to find the appellee standing in close proximity behind him. [*Id.*] Appellant said that, because he was aware that appellee had on several occasions in the past struck other individuals under various circumstances, he became fearful for his safety and immediately grabbed the appellee. [J.A. at 410-11, 415, 425]. Appellant claims the two men fell to the ground, with Davis falling on top of the appellee. Davis claims that after that occurred, he merely got to his feet, got into his vehicle and left the area; he denied kicking or beating Christian. [J.A. at 410, 415].

Christian contended, however, that he had just driven through downtown Frederiksted and drove past the appellant in the area of the Apothecary Hall speaking to several other men. The two men exchanged words, and Christian continued driving to the grocery store. [J.A. at 185]. There, he exited his vehicle and was standing on the sidewalk talking to a then-14-year old boy, Emile Williams ("Williams"). [J.A. at 186]. Christian asserts that, as he stood there, Davis approached and exited his vehicle suddenly and immediately struck him twice in the mouth. [*Id.*]. Appellee said he then grabbed the appellant, trying to subdue him, and a struggle ensued. The two men fell to the ground, and Christian asserted that Davis "came down" with his knee on his left shoulder, causing pain. [J.A. at 187]. As a result of the injury to his shoulder, Christian said he was helpless and remained on his knees in pain, while Davis continued to

kick and punch him. [*Id.*]. Williams also testified on behalf of Christian at trial and substantially corroborated the appellee's statements that Davis initiated the assault and then continued to punch and kick him while on the ground. [J.A. at 344-47, 352-58].

Following the incident, Christian said he first entered the store and called the police, but then drove to the police station which, at that time, was a short distance away in Hannah's Rest, near the Abramson Bus Terminal. [J.A. at 188-90]. A police officer at the station, who also testified, called an ambulance after taking a police report, and Christian was taken to the Juan Luis Hospital. [*Id.*]. The emergency room physician who treated Christian, Dr. Arturo Lamboy ("Dr. Lamboy"), testified that an x-ray of Christian's left shoulder revealed a dislocation. [J.A. at 156]. Dr. Lamboy also testified that Christian had bruises to the face, and there was evidence of bleeding in the nose area, as well as abrasions to the shoulder or rib area. [J.A. at 156]. Dr. Lamboy testified that he, aided by several other medical personnel, repositioned the dislocated shoulder, which was an extremely painful procedure and which required administration of pain killers. [J.A. at 158-59]. Following that treatment, Christian's shoulder was braced, and he was sent home with pain medication and instructions to see Dr. Claudius Henry ("Dr. Henry") for follow-up treatment. [*Id.* at 160]. Christian's recovery lasted at least three months, during which he said he was able to sleep only in a recliner and experienced considerable pain, and during which he continued under the care of Dr. Henry. He also continues to have limited mobility of his left shoulder. [J.A. at 129].

Christian's live-in girlfriend at the time, Rosaura Sanchez ("Sanchez"), also testified at trial that Christian required assistance for several months following the incident; however, she identified his right shoulder as the point of injury—a factual variance which Davis contends calls into question the veracity of the appellee's and that witness' testimony. [J.A. at 330].

Christian filed an action in Territorial Court for compensatory and punitive damages. Given his view of events, Davis also filed a counterclaim for damages, claiming he suffered an assault when Christian stood in such close proximity to him at the grocery store. In support of that claim, Davis contended that, because he knew of Christian's prior altercations with other individuals on separate occasions, he was put in apprehension of fear of harm when he turned around to find Christian so

close to him. The trial court, on motion by-Christian, dismissed the appellant's counterclaim, after finding the asserted facts failed to establish a prima facie claim of assault.

At the close of the evidence, the trial court denied appellant's motion for judgment as a matter of law and rejected a request to take the issue of punitive damages from the jury based on a lack of evidence adduced at trial surrounding the appellant's financial means to pay such an award, noting the issue of the defendant's wealth was an issue to be considered following the verdict, in determining the reasonableness of an award. [J.A. at 488-89]. Following trial, the jury awarded compensatory damages of $15,000 and punitive damages of $10,000. Appellant renewed his motion for judgment as a matter of law, new trial or remittitur following the verdict. Without opinion or discussion, the Territorial Court by order dated April 17, 2001 denied that motion in every respect. This appeal followed.

## II. DISCUSSION

### A. Jurisdiction and Standards of Review

This Court has jurisdiction to review this timely civil appeal. *See* VIRGIN ISLANDS CODE ANN. tit. 4, § 33 (1997 & Supp. 2003); Section 23A of the Revised Organic Act of 1954.[5]

 We afford plenary review to the trial court's denial or grant of motions for judgment as a matter of law under Federal Rule of Civil Procedure 50. *See Proctor v. North Shore Partners, Inc.*, 232 F. Supp. 2d 472,475-76 (D.V.I. App. Div. 2002); *Rotondo v. Keene Corp.*, 956 F.2d 436 (3d Cir. 1992). That standard requires that we view the evidence and all reasonable inferences therefrom in the light most favorable to the non-movant. *Rotondo*, 956 F.2d at 438. Judgment as a matter of law is appropriately granted only where "the record is critically deficient of that minimum quantum of evidence from which a jury might reasonably afford relief." *Honeywell, Inc. v. American Standards Testing Bureau, Inc.*, 851 F.2d 652,654-655 (3d Cir. 1988). Similarly, the sufficiency of the evidence to support a punitive damage award is a question of law to be reviewed *de novo*. *See Thomas Hyll Funeral Home, Inc. v. Bradford,*

---

[5] The Revised Organic Act of 1954 is found at 48 U.S.C. § 1613a (1994), *reprinted in* V.I. CODE ANN., Organic Acts, 73-177 (codified as amended) (1995 & Supp. 2003) (preceding V.I. CODE ANN. tit. 1) ["Revised Organic Act"].

233 F. Supp. 2d 704, 713 (D.V.I. App. Div. 2002) (*citing Alexander v. Riga*, 208 F.3d 419, 429 (3d Cir. 2000)). However, the trial court's denial of remittitur is reviewed for abuse of discretion. *Id.* (citing *Dunn v. HOVIC*, 1 F.3d 1362, 1364, 28 V.I. 526 (3d Cir. 1993)). The trial court may properly grant remittitur only if the verdict is clearly against the weight of the evidence as to constitute a miscarriage of justice "or where the verdict, on the record, cries out to be overturned or shocks the conscience." *Id.* at 708-09 (internal quotation marks and citation omitted). As we have previously stated, "To remit damages, the judge must find that no rational jury, acting on the basis of the full evidentiary record, and without being inflamed by passion or prejudice or other improper consideration, could have awarded such a large sum as damages." *Id.* (citation omitted). The court's determination of a motion for new trial is entitled to review only for abuse of discretion, unless that denial is based on application of a legal precept, which is entitled to plenary review. *See Honeywell, Inc. v. American Standards Testing Bureau, Inc.*, 851 F.2d 652, 654-55 (3d Cir. 1988); *Bradford*, 233 F. Supp. 2d at 708-09.

## B. Motion for Judgment as a Matter of Law or Remittitur

### 1. Punitive Damages

Appellant moved for judgment notwithstanding the verdict or remittitur, arguing the issue of punitive damages was inappropriately put to the jury in this instance given the lack of evidence adduced at trial regarding his ability to pay such damages. In support of that argument, Davis argues that precedent in this jurisdiction preconditions submission of the punitive damages issue to the jury on the plaintiff's submission of evidence regarding his financial condition.

In the absence of substantive Virgin Islands law, we turn to the common law as reflected in the restatements, applicable by-virtue of title 1, section 4 of the Virgin Islands Code.[6] In that regard, the Restatement provides:

> (1) Punitive damages are damages, other than compensatory or nominal damages, awarded against a person to punish him for

---

[6] In the absence of local law to the contrary, the American Law Institute's various Restatements of Law are the rules of decision in the Virgin Islands. 1 V.I.C. § 4.

his outrageous conduct and to deter him and others like him from similar conduct in the future.

(2) Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others. ...

RESTATEMENT (SECOND) OF TORTS § 908 (1979). Once the underlying tort is established, it is then within the broad discretion of the jury, as trier of fact in this instance, to award an amount of punitive damages it finds warranted given the nature of the defendant's conduct. *Id.* at cmt. d; *see also Perez v. Weigers*, 25 V.I. 379 (App. Div. 1990). The comments to section 908 underscore the purpose of this remedy to punish the tortfeasor and deter others from like conduct. *See* RESTATEMENT § 908 cmts. a, b. Unlike other remedies, there is no mathematical formula for calculating punitive damage awards. Rather, such "awards are the product of numerous, and sometimes intangible, factors; a jury imposing a punitive damages award must make a qualitative assessment based on a host of facts and circumstances unique to the particular case before it." *TXO Prod. Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 457, 125 L. Ed. 2d 366, 113 S. Ct. 2711 (1993) (noting impracticability of requiring comparisons of punitive damage awards in related cases) (cited in *Dunn v. HOVIC*, 1 F.3d 1371, 1382, 28 V.I. 467 (3d Cir. 1993)). To guide the jury's determination in that regard, the Restatement outlines several permissible considerations:

> In assessing punitive damages, the trier of fact *can properly* consider the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause and the wealth of the defendant.

RESTATEMENT § 908(2) (emphasis added). As the Restatement explains, the financial standing of the defendant is one of several factors which may aid the jury in setting an amount of punitive damages that would best serve its retributive and deterrent goals:

> In determining the amount of punitive damages, as well as in deciding whether they should be given at all, the trier of fact *can properly* consider not merely the act itself but all the circumstances including the motives of the wrongdoer, the relations between the parties and the provocation or want of provocation for the act ... .

565

The wealth of the defendant is also relevant, since the purposes of exemplary damages are to punish for a past event and to prevent future offenses, and the degree of punishment or deterrence resulting from a judgment is to some extent in proportion to the means of the guilty person.

*Id.* at cmt. e. The factors in the Restatement, and in the comments appended thereto, are stated in purely permissive terms, and there remains a split in authority regarding whether such evidence is a necessary predicate for submission of a punitive damage claim to the jury—although it appears the majority of jurisdictions embraces the permissive nature of such considerations. *See e.g.,* 1 JACOB A. STEIN, PERSONAL INJURY DAMAGES TREATISE § 4:53 (3d ed.) (noting that permissive, rather than mandatory admission of the factors is the approach adopted in the majority—over 30—of jurisdictions, while few mandate such consideration as a condition of punitive damages); 87 A.L.R.4th 141 (1991) (discussing different approaches; collecting cases); 22 AM. JUR. *Damages* § 706 (acknowledging the split in authority on his issue); *cf., Dunn,* 1 F.3d at 1382 (acknowledging that the procedure for calculating punitive damages applied in the Virgin Islands leaves significant discretion in the jury and does not "mandate[ ] a set of criteria a jury must consider when calculating punitive damages"); *compare, Herman v. Hess Oil V.I. Corp.,* 524 F.2d 767, 772 (3d Cir. 1975) (noting generally that wealth may be considered); *Welch v. Epstein,* 342 S.C. 279, 536 S.E.2d 408, 423 (App. 2000) (noting that, though evidence of the defendant's financial condition is a relevant factor that may properly be put to a jury, it is not controlling and such evidence "is not a prerequisite to a punitive damage award") (citing *Rogers v. Florence Printing Co.,* 233 S.C. 567, 106 S.E. 2d 258 (1958) (holding that punitive damages is to be left to the jury to "arrive at a fair award of such damages whether or not evidence be offered as to the defendant's financial worth"); *but see, Gares v. Willingboro Twp.,* 90 F.3d 720, 730 (3d Cir. 1996) (holding, applying New Jersey statutory law, that evidence of a defendant's financial condition must be admitted). However, despite the apparent split in authority and the absence of controlling precedent in this jurisdiction on the precise issue presented here, we find assistance in the U.S. Supreme Court's decision in *Pacific Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 18, 113 L. Ed. 2d 1, 111 S. Ct. 1032 (1991) and by earlier

566

pronouncements of our courts considering challenges to punitive damages on due process grounds.

In reviewing the propriety of a jury instruction and assessment of a punitive damage award where no evidence of the defendant's financial standing was put to the jury, the *Haslip* Court endorsed the common law method of assessing punitive damages, as outlined in the restatements and as applied in Alabama, and determined that the failure to put the issue of wealth to the jury was not fatal to the award. *See Haslip*, 499 U.S. at 15-22.[7] Of this, the court noted:

> Under the traditional common-law approach, the amount of the punitive award is initially determined by a jury instructed to consider the gravity of the wrong and the need to deter similar wrongful conduct. The jury's determination is then reviewed by trial and appellate courts to ensure that it is reasonable.
>
> This Court more than once has approved the common-law method for assessing punitive awards.

*Haslip*, 499 U.S. at 15 (noting the imposition and amount of punitive awards lie solely within the jury's discretion) (citations omitted).[8] While Alabama did not permit the jury's consideration of the wealth of the defendant, there existed judicially-established post-trial procedures for scrutinizing awards which permitted courts to independently apply factors similar to those enumerated in Section 908, including evidence of the defendant's financial condition, as part of its reasonableness determination. *See* note 5, *supra*. The Supreme Court found that independent post-trial review process sufficient to safeguard against

---

[7] The jury in *Haslip* was instructed on the purposes of punitive damage awards and further instructed, as follows, to use its discretion in arriving at a sum that would accomplish those purposes:

> Imposition of punitive damages is entirely discretionary with the jury; that means you don't have to award it unless this jury fels that you should do so.
> Should you award punitive damages, in fixing the amount, you must take into consideration the character and the degree of the wrong as shown by the evidence and necessity of preventing similar wrong.

*Haslip*, 499 U.S. at 6 n.1.

[8] The Court, referring to its observation earlier in *Missouri Pacific R. Co. v. Humes*, 115 U.S. 512, 29 L. Ed. 463, 6 S. Ct. 110 (1885), noted that, "The discretion of the jury in such cases is not controlled by any very definite rules; yet the wisdom of allowing such additional damages to be given is attested by the long continuance of practice." *Id.* at 16.

excessive or arbitrary punitive damage awards and rejected the defendant's argument that the award was "the product of unbridled jury discretion" and violative of its due process rights, notwithstanding the absence of any facts before the jury regarding the defendant's ability to pay.[9] *See Haslip,* 499 U.S. at 7, 20-22. Moreover, the Court noted that the jury's discretion was further constrained by the trial court's direction that any punitive award be framed with the purposes of deterrence and retribution in mind and in consideration of the gravity of the wrong. *Id.* at 19-20.

The linchpin for the *Haslip* Court's determination regarding the adequacy of the guidance given the jury in framing an appropriate award was the existence of meaningful and adequate post-trial and appellate review to ensure the reasonableness of an award and to guard against arbitrary exercise of the jury's broad discretion in setting an amount of damages. *See Haslip,* 499 U.S. at 20-22. Therefore, no set criteria was mandated to be put to the jury for its consideration, apart from that given in the jury instruction by the Alabama trial court and noted with approval by *Haslip.* This Circuit, following *Haslip,* has found similarly.

In *Dunn v. HOVIC,* 1 F.3d 1362 (3d Cir. 1993), decided just two years after *Haslip,* the Third Circuit Court of Appeals acknowledged the absence of mandatory factors which must be considered by Virgin Islands juries in calculating punitive damages, but rejected the notion that such broad discretion amounted to a denial of due process. *See Dunn,* 1 F.3d at 1378-82.[10] Explicitly rejecting a decision of the Fourth

---

[9] The factors which were considered on post-trial *de novo* review included:

(a) whether there is a reasonable relationship between the punitive damages award and the harm likely to result from the defendant's conduct as well as the harm that actually has occurred; (b) the degree of reprehensibility of the defendant's conduct, the duration of that conduct, the defendant's awareness, any concealment, and the existence and frequency of similar past conduct; c) the profitability to the defendant of the wrongful conduct and the desirability of removing that profit and of having the defendant also sustain a loss; (d) the "financial position" of the defendant; (e) all the costs of litigation; (f) the imposition of criminal sanctions on the defendant for its conduct ...; and (g) the existence of other civil awards against the defendant for the same conduct ... .

*Haslip,* 499 U.S. at 21-22 (citations omitted).

[10] The Court was also asked to decide the analogous issue whether a punitive award must be tied to the amount of actual injury. Though declining to reach the issue because it was not preserved for appeal, the Court noted that while Section 908 of the Restatement provided that the extent of harm *can* be properly considered, nothing in that provision

Circuit that found similar standards for imposing punitive awards impermissibly vague, the *Dunn* Court acknowledged that the procedure used in the Virgin Islands for assessing punitive awards does not mandate "a set of criteria a jury must consider when calculating punitive damages" *Id.* at 1381 (rejecting holding by *Mattison v. Dallas Carrier Corp.*, 947 F.2d 95 (4th Cir. 1991), that similar procedure (as that used in the Virgin Islands) did not provide due process and noting that post-trial review under Rules 50 and 59 and federal appellate review of a jury award provide sufficient constraints on a jury's discretion to satisfy the requirements of due process and which directed trial courts to instruct the jury to consider the defendant's ability to pay, among other things). Rather, the *Dunn* Court, embracing the approach, found proper in *Haslip,* held that independent post-trial assessment of such awards, which include consideration of the defendant's financial condition—among other factors—provided "sufficient constraint on the jury's discretion." *Dunn,* 1 F.3d at 1381. The *Dunn* Court, relying on the principles developed in *Haslip,* also found sufficient a jury instruction that merely explained the punitive and deterrent goals of such awards and the appropriateness of such awards for only the most extreme and outrageous conduct. *See id.* at 1380 (noting that, though additional guidance could have been given, the instruction was constitutionally adequate under *Haslip*) (citing *Haslip,* 499 U.S. at 16; *Glasscock v. Armstrong Cork Co.,* 946 F.2d 1085, 1097 (5th Cir. 1991), *cert, denied,* 503 U.S. 1011, 118 L. Ed. 2d 435, 112 S. Ct. 1778 (1992); *American Employers Ins. Co. v. Southern Seeding Servs.,* 931 F.2d 1453, 1457-58 (11th Cir. 1991). *But see Mattison v. Dallas Carrier Corp.,* 947 F.2d 95, 105-06 (4th Cir. 1991)). The *Dunn* Court ultimately-approved of the trial court's post-trial review of the defendant's net worth, the relationship of the compensatory-damage award, a comparison of awards in similar cases and other factors, in assessing the basis for the punitive damage award, noting, "These factors considered in post-trial review were approvingly referred to in *Haslip,* and serve as an effective counterpoint to the wide discretion given the jury." *Id.* at 1382. *Dunn* further recommended that courts reviewing punitive damage awards explicitly assess the amount of

---

required that such an award *must be* related to actual injuries. *See Dunn,* 1 F.3d at 1378 & n. 9.

such awards in light of the factors set out in RESTATEMENT (SECOND) OF TORTS § 908 cmt. e. *See Dunn*, 1 F.3d at 1382 n. 15.

There is nothing in *Dunn* to suggest that juries are mandated to consider evidence of the defendant's wealth or any of the other factors outlined in section 908, nor can we find support in *Haslip* for a bright line rule governing what a jury must consider in determining an appropriate punitive damages award. Rather, as we read *Haslip* and *Dunn*, what is important is that there be some limitations on the jury's exercise of discretion in imposing punitive damages, whether through an instruction on the criteria listed in Restatement § 908 or through a thorough post-trial review process which includes consideration of those factors. *See generally Haslip*, 499 U.S. 1, 113 L. Ed. 2d 1, 111 S. Ct. 1032; *Dunn*, 1 F.3d 1371, 28 V.I. 467; *compare, Acosta v. Honda Motor Co., Ltd.*, 717 F.2d 828, 839 (3d Cir. 1983) (noting that, because both the wealth of the defendant and the size of compensatory damages are taken into account in assessing punitive damages, "corporate defendants are protected from excessive punitive damage awards through judicial control both at the district court and appellate levels"); *Glasscock*, 946 F. 2d at 1098-99 (rejecting argument that moire deferential review standard violates due process under *Haslip*, because consideration of similar factors found sufficient in *Haslip*; noting that *Haslip* did not put forth Alabama system as the model to follow but requires only that its guiding principles for providing limits on jury's discretion are followed); *Bennis v. Gable*, 823 F.2d 723, 734 n.14 (3d Cir. 1987) (rejecting "the defendants' contention that evidence of their financial status was a prerequisite to the imposition of punitive damages", because defendant's financial status is not an element of the plaintiff's cause of action which must be proved before punitive damages are awarded; noting that wealth is but one factor under section 908 which may be considered, and such evidence may also be introduced by the defendant if he finds it helpful to the jury's determination); *cf., Eichenseer v. Reserve Life Ins. Co.*, 934 F.2d 1377, 1384-86 (5th Cir. 1991) (rejecting argument that deferential review based on "shock the conscience test," in the absence of a post-trial review system as that espoused in *Haslip*, was per se improper following *Haslip* and holding such deferential post-verdict review may properly be subject to reversal where the trial court did not instruct the jury on the criteria in section 908 to guide its determination of damages; noting that several safeguards for controlling the jury's discretion so that award of punitive

damages comports with due process include: comprehensive jury instructions explaining the nature of punitive damages; state laws limiting the amount of such damages, and rigorous appellate review).

In this instance, there was no evidence of Davis' net worth. The only evidence surrounding the appellant's likely ability to pay punitive damages was circumstantial evidence that he had retired as Fire Chief in 1988 after over 25 years of service. (J.A. at 427). There was also evidence that Davis was, at the time of trial, working full time as an independent licensed contractor and had several employees working with him. (*Id.*). At the conclusion of the evidence, the court instructed the jury as follows:

> In addition to the actual damages, the law permits the jury, under certain circumstances, to award the injured person punitive and exemplary damages in order to punish the wrongdoer for some extraordinary misconduct and to serve as an example or warning to others not to engage in such conduct.
>
> If you find from a preponderance of the evidence in the case that a claiming party is entitled to a verdict for actual or compensatory damages, and you further find that the act or the omission of the opposing party which proximately caused actual injury or damage to the claiming party was maliciously, or wantonly or oppressively done, then you may add to the award of actual damages such amount as you shall unanimously agree to be proper, as punitive or exemplary damages ... .
>
> Whether or not to make an award of punitive and exemplary damages in addition to actual damages is a matter exclusively within the province of the jury. If you unanimously find from a preponderance of the evidence in the case that the opposing party's act or omission which proximately caused actual damage to the claiming party was maliciously, or wantonly or oppressively done; but you should always bear in mind that such extraordinary damages may be allowed only if you should first unanimously award the claiming party a verdict for actual or compensatory damages, [sic].
>
> And you should also bear in mind, not only the conditions under which, and the purpose for which the law permits an award of punitive damages to be made, but also the requirement of the law that the amount of such extraordinary damages, when awarded,

must be fixed with calm discretion and sound reasons and must never be either awarded or fixed in an amount because of any sympathy, or bias or prejudice with respect to any party in the case.

Now, the fact that I have instructed you as to the proper measure of damages should not be considered as suggesting any view of mine as to (whether) any party, if any, is entitled to your verdict.

[*Id.* at 556-59]. In response to a question by the jury regarding a standard for arriving at an amount of compensatory and punitive damages, the court further instructed: "There is no specific guidelines to tell you step-for-step how you arrive at an amount of damages. What you do is you use reasonableness, you use your common sense and you apply that to the evidence that has been presented in court and the facts as you had found them." [*Id.* at 566-67]. In view of the foregoing and the principles outlined in *Haslip,* the direction afforded the jury was adequate, and the appellee's failure to put forth evidence of the appellant's financial status cannot, standing alone, provide a basis for reversal.[11] Thus, we turn to the sufficiency of the trial court's post-verdict review of the award.

After conclusion of evidence, Davis moved for judgment as a matter of law and requested that the court dismiss any claims for punitive damages based on Christian's failure to adduce evidence of Davis' financial status. The court, after having taken the matter under advisement, rendered a ruling from the bench denying Davis' motion. [J.A. at 488-89]. In denying the motion to dismiss, the trial court held that the failure to admit evidence of wealth, while an "appropriate factor for the jury to consider in determining the amount of punitive damages", was not fatal to that claim. [*Id.* at 489]. The court held: "The Court does not find, however that in and of itself is a basis to dismiss the punitive damage claim in that the essentials for punitive damage claim [sic] is the extent or the nature of the conduct of the defendant. That conduct has not been challenged in the defendant's motion and the Court would find the motion more appropriate if, in fact, the punitive damage award excessive to be made at that time." [sic] [*Id.* at 489]. Following the verdict, Davis

---

[11] The authorities relied on by the appellant do not command a different result. *See* e.g., *Gares v. Willingboro Twp.,* 90 F.3d 720, 730 (3d Cir. 1996) (applying New Jersey-statutory law which required consideration of the defendant's financial condition); *Tunis Bros. Co. v. Ford Motor Co.,* 952 F.2d 715, 740 (3d Cir. 1991) (applying law of Pennsylvania); *Dunn,* 1 F.3d 1371, 28 V.I. 467 (discussed above).

again submitted a motion for judgment as a matter of law or remittitur, in which he attacked the verdict as excessive. Without stating reasons, the court entered a brief order denying that motion.

■ The post-trial review of the punitive award afforded Davis fell far short of the rigorous process required as a check on the jury's discretion under *Haslip*. The record does not reflect the trial court's consideration of any of the restatement factors, including the wealth of the defendant. This is particularly concerning in this instance, because the jury had before it no definite financial information to guide its determination of damages and in light of the authorities noted above. From the testimony regarding Davis' status as a retiree from a high government office and an active contractor, the jury and the court could reasonably infer only that Davis was collecting a pension and an additional income from his construction business. They could infer nothing, however, of the defendant's total assets or liabilities, or any financial frailties. Moreover, the trial court appears to have had no additional facts before it in ruling on the post-trial motion and also did not appear to consider the factors in Section 908 of the Restatement, despite its correct assertion that such consideration would be appropriate upon a post-verdict challenge to the amount of the award. Accordingly, we will reverse the court's denial of the motion for remittitur and remand for further consideration of the reasonableness of that award, based on the factors in the restatement and the relevant case law. In light of *Haslip* and the line of cases which have followed, we also instruct that the trial court heretofore apply the factors listed in section 908 of the restatement in conducting its post-trial review of punitive damage awards. The deferential standard of review traditionally used in the Virgin Islands, which permits reversal only where the verdict "shocks the conscience," may be appropriate only where the jury fully considered, and was instructed on, the restatement factors.[12] In the absence of such consideration by the jury, the trial court must conduct a full post-verdict review of the verdict, taking into consideration the factors outlined in section 908 of the restatement.

---

[12] We note that the Supreme Court in *TXO*, 509 U.S. at 464, while not deciding the issue, noted its concern about the prejudicial impact of placing the issue of the defendant's wealth to the jury.

## 2. Dismissal of Appellant's Counterclaim.

Appellant finally argues the trial court erred in granting Christian's motion for judgment as a matter of law, thereby dismissing Davis' counterclaim for assault and battery. The gravamen of Davis' argument is that he was sufficiently shown to have been placed in apprehension of fear of harm to send the issue of assault to the jury.

As earlier noted, the court's grant of the appellee's Rule 50 motion is afforded plenary review, and the evidence is to be viewed in a light most favorable to the appellant, along with the benefit of all reasonable inferences therefrom. *See Rotondo*, 956 F.2d at 438. Here, we must also determine that there exists a "minimum quantum of evidence" from which a jury might have reasonably afforded relief on the appellant's claim. *See Dawson v. Chrysler Corp.*, 630 F.2d 950, 959.

 Applicable law subjects an actor to liability to another for assault if:

(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and

(b) the other is thereby put in such imminent apprehension.

RESTATEMENT (SECOND) OF TORTS § 21 (1965); *compare*, 14 V.I.C. §§ 291, 292 (similar standard for criminal assault). Actionable conduct necessarily requires that there be some overt act which carries the threat of immediate harm to another. Similarly, the element of "apprehension" sufficient for liability for assault requires that the victim must have "believe[d] that the act may result in imminent contact unless prevented from so resulting by the other's self- defensive action or by his flight or by the intervention of some outside force." RESTATEMENT at § 24. Importantly, mere words cannot be a basis for liability for assault, unless coupled with some overt act "apparently intended to carry the threat into execution" which creates a reasonable apprehension of an imminent harmful or offensive bodily contact. RESTATEMENT § 31 and cmt a; *cf., id.* at cmt. b (words may also have the opposite effect of negating an otherwise threatening act).

 Even viewing the defendant's assault claim in the light most favorable to him, along with the benefit of all reasonable inferences that may be drawn therefrom, his claim of assault was not sustainable on this record. Appellant's argument that he was assaulted was based on his

version of the incident: that he heard a voice behind him saying, "Look at that old man" and, thereafter, turned around and found appellee standing in extremely close proximity to him. Noticeably absent is any claim of an overt threat of harm or words which could be construed as a threat to do harm, which could add some threatening character to Christian's otherwise routine act of standing close to Davis in a public place. Rather, appellant's sole basis for asserting he was put in fear of harm was because of his knowledge that appellee had been involved in physical altercations in the past. He asserts that the sheer thought of appellee being in such close proximity to him made him immediately fearful, notwithstanding his testimony that he had not only worked with appellee for many years, but had necessarily been in his immediate presence on other occasions. Under the circumstances present here, the trial court did not err in finding the fact of the appellee's close proximity to the appellant insufficient to establish assault as a matter of law, absent some showing that there was also an immediate personal threat of harm.

## C. Motion for New Trial.

Appellant additionally urges this Court to find error in the trial court's denial of his motion for new trial. Davis' arguments in this regard rest on his contention that evidence at trial on the issue of liability was insufficient to support the jury's verdict, where some of the witnesses gave contradictory and impeachable testimony. Davis argues here that glaring inconsistencies in the trial testimony on several issues precluded a reasonable jury from finding him liable for an assault and battery and called into question the credibility of various witnesses.

We need not belabor this point here by recounting or attempting to reconcile every inconsistency to which Davis points, because these are matters of credibility best left to the factfinder. Davis had the opportunity, on cross-examination to attempt to impugn the credibility of all of the appellee's witnesses at trial and, indeed, admirably did so by presenting several witnesses to testify to the appellee's character for truthfulness and to offer impeaching evidence. The fact that the jury ultimately resolved its determinations against Davis is not a basis for a new trial, particularly in light of the overwhelming testimonial and medical evidence. *See Shanno v. Magee Industrial Enters., Inc.*, 856 F.2d 562, 567 (3d Cir. 1988) (On motion for new trial, a court may not simply substitute its judgment of the facts and the credibility of the witnesses for

those of the jury.) (citations omitted). We accordingly find no abuse of discretion in the trial court's denial of a new trial.

## III. CONCLUSION

The lack of evidence of the defendant's financial worth provides no basis for reversing the jury's verdict or for judgment as a matter of law, new trial or remittitur. However, we hold that the trial court abused its discretion in failing to consider evidence of the defendant's financial condition in its post-trial review of the punitive damage award. We, therefore, reverse the denial of the post-trial motion and remand for further consideration consistent herewith. The remaining challenges to the sufficiency of the evidence at trial and the court's dismissal of appellant's counterclaim present no basis for reversal here. Accordingly, the judgment of liability will be affirmed.